[Civ. No. 3459. Third Appellate District.—April 24, 1928.]

P. L. BURR, Appellant, v. PEPPERS COTTON LUMBER COMPANY (a Corporation) et al., Respondents.

R. H. Countryman for Appellant.

Tebbe & Tebbe, Frank Thunen and W. S. Dwinell for Respondents.

BARTLETT, J., *pro tem.*—This is an appeal from an order of the superior court of Siskiyou County, sustain-

ing demurrers of various defendants to plaintiff's complaint without leave to amend and from the judgments entered in favor of defendants.

The action was brought to foreclose a mechanic's lien on a certain railroad and its right of way and improvements thereon in Siskiyou County, the facts upon which the action is based set forth in the complaint being substantially the following:

Defendant, Peppers Cotton Lumber Company, constructed a railroad, commonly known as the Peppers Cotton Lumber Company Railroad, about seven miles in length, leading from Macdoel to the mill of the lumber company, in Siskiyou County. Plaintiff was the contractor who built the railroad. His employment had its inception on October 5, 1920, in a letter specifying his duties and compensation for the grading of the roadbed, which letter was addressed to the railroad company and the terms of which were accepted by the company. Thereafter plaintiff was employed by the company to haul, place, and lay the ties and rails and build the bridges and culverts, and surface and ballast the railroad, and to act as purchasing agent in San Francisco of the lumber company in construction of the railroad. The lumber company was to pay all costs and expenses of construction, including all materials and labor. Plaintiff was to receive for his services a flat sum fee, a certain percentage amount based on the estimated cost of the work, a division of any savings under the estimated cost prices, and also repayment of any sum of money paid, laid out or expended in the construction of the railroad. Plaintiff expended various sums of money in connection with the construction of the road, and it is for the balance due on the money so expended that he claims the mechanic's lien on the railroad properties sought to be enforced in this action. The moneys claimed to have been expended on which the right to a lien in plaintiff's favor is based, are alleged to have been for amounts and purposes as follows: $7,958.25 for wages of various workmen employed on the railroad work, $1,918.50 for necessary supplies furnished the workmen, $3,072.62 for steel rails furnished the railroad, $182.27 for freight for materials and equipment, $31.50 for telegrams in connection with carrying supplies, materials, and labor, $370 for railroad fares for various workmen to and from the railroad

right of way, $374.93 for workmen's compensation insurance on said railroad work, and $278.86 for railroad charges for transportation of plaintiff incurred in connection with his work. In the lien filed and in the complaint it is stated "that said respective sums of money and each of them, were paid, laid out and expended by this plaintiff to and for said defendant, Peppers Cotton Lumber Company, on said railroad, and on said rights of way between the fifth day of October, 1920, and the twenty-fifth day of August, 1921," and "that no part or portion of any of said expenses or payrolls or wages was or were to be paid by this plaintiff and that each and all thereof was and were to be paid by said defendant, Peppers Cotton Lumber Company." On May 20, 1921, plaintiff ceased work and notified the lumber company that he did so because of its "failure, refusal and neglect to pay the various demands and charges, bills and expenses for wages and labor and materials done or furnished to and for said railroad work and in connection with said work and the performance thereof."

But one question for solution is presented by this appeal. Does the California Mechanic's Lien Law give a lien to secure repayment of moneys voluntarily advanced by a contractor in payment of claims against an owner which the contractor is not obligated to pay by his agreement?

Appellant has submitted an exhaustive and elaborate brief, in which the law and decisions, both of California and of many other states, are discussed and reviewed in an endeavor to support his claim that the law, as it now stands, permits a mechanic's lien in favor of plaintiff securing the payment of the moneys claimed to have been advanced by him for work and materials used in the construction of the railroad. Much attention is given to an examination of cases involving the distinction between liens that are direct and liens by subrogation. Such cases are not material in point concerning this case, for if appellant has a lien, it is necessarily a direct one arising by virtue of the provisions of section 1183 of the Code of Civil Procedure, which, as it now stands, was enacted in 1911. (Stats. 1911, page 1313.) That act, which amended section 1183 and a number of the following sections of the Code of Civil Procedure previously enacted by the California legislature, concluded with the following declaration of legislative intent: "The

provisions of this act shall be liberally construed with a view to effect its purpose. They are not intended as a re-enactment of the provisions of former statutes, with the policy heretofore impressed upon the same by the courts of this state, but are intended to reverse that policy to the extent of making the liens provided for, direct and independent of any account of indebtedness between the owner and constructor, thereby making the policy of this state conform to that of Nevada and the other Pacific Coast states.''

The right of a mechanic's lien is created by organic law and must be considered as a part of the fundamental law of California by reason of section 15 of article XX of the state constitution, which reads: ''Mechanics, materialmen, artisans, and laborers of every class shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor and material furnished; and the legislature shall provide by law for the speedy and efficient enforcement of such liens.'' This provision of the constitution gives a lien upon properties to four classes of persons contributing material or labor upon real property, and in pursuance of the direction to the legislature to enact laws for the speedy and efficient enforcement of such liens, section 1183 of the Code of Civil Procedure and subsequent sections of that code have been enacted.

The constitutional provision did not enlarge the classes of persons entitled to a claim of lien additional to those who before its enactment in 1879 had been allowed liens through various legislative acts passed before the adoption of the present constitution. By the terms of section 1183 of the Code of Civil Procedure a lien is given on property because the person claiming the lien has bestowed labor, or furnished materials or appliances, teams or power, upon the property sought to be charged. Appellant seeks a direct lien in this case, not because of personal labor, nor because of any personal furnishing of materials used in the construction work, but because he advanced his own money in paying for a portion of the labor and materials bestowed and furnished by persons other than himself.

The right to a lien is a personal one. That the right to claim it cannot be assigned is clearly announced in *Mills* v. *La Verne Land Co.*, 97 Cal. 254 [33 Am. St. Rep. 168,

32 Pac. 169]. The facts in this case are in some respects similar to those in *Cadenasso* v. *Antonelle*, 127 Cal. 382 [59 Pac. 765], where moneys were advanced to pay for labor and material used in the construction of a tunnel and suit was instituted against the bondsmen of the contractor to compel payment of the money advanced. The court gave a judgment for plaintiff, which was reversed on appeal. In the opinion (page 386) the court says: "Money is not labor and it is not material furnished in the sense of the undertaking and the complaint."

Appellant strenuously insists throughout his argument that the expression of legislative intent, announced in the last section of the act of the California legislature in 1911, hereinbefore set forth, has made inapplicable certain doctrines declaring who are entitled to mechanics' liens, under the former decisions of the supreme court of this state. The declaration of intent set forth in the statute does not support this contention. The policy intended to be reversed by the statute was to make any liens allowed by its provisions independent of the account of indebtedness between the owner and contractor and the direction that the provisions of the act should be liberally construed was intended to require that such species of construction should be given the remedial portions of the act to claimants coming within the classes entitled to the benefit of its provisions. The rule of construction as to whether it should be liberal or strict, applicable to mechanic's lien laws, is clearly stated in Corpus Juris, at page 53, section 14, volume 40: "It is held in a number of cases that provisions relating to the creation, existence or right to the lien, being in derogation of the common law, should be strictly construed, while provisions relating to the enforcement of the lien after it has once attached, being remedial in character, should be liberally construed."

The placing of appellant, by reason of his alleged acts, within the classes afforded a lien under the California statute, would give anyone advancing moneys, which paid for supplies or material, in effect, a mortgage or trust deed upon property. That such is not the rule is announced both in text-books on the subject of mechanics' liens, and the decisions of the supreme court of this state. Boisot on Mechanics' Liens, section 114, says:

"A statute giving liens to those furnishing work or material does not extend to those furnishing money with which the work and materials are paid for. . . . And a contractor who makes, in the name and on the credit of the owner of the building, a contract with a third person to do certain work on the building, and pays him therefor, has no lien for such work, since the work was furnished by the owner, through the contractor as his agent, and the contractor merely furnishes the money with which to pay for the work."

In James on the Law of Mechanics' Liens upon Real Property in California, section 68, the California rule is given as follows: "One who advances money to the contractor, although for the payment of materials and labor devoted to the erection of a building, is not entitled to a mechanic's lien."

The leading case upon this question is that of *Godeffroy* v. *Caldwell*, 2 Cal. 489 [56 Am. Dec. 360], which states: "The mechanic's lien law provides exclusively for the security of materialmen and laborers; and one who advances money as a loan, although it is expressly for the payment of materials and labor devoted to the erection of a building, can have no claim to the benefit of the law."

The case of *Sweet* v. *Fresno Hotel Company*, 174 Cal. 789 [Ann. Cas. 1918D, 346, 164 Pac. 788], was to enforce a claim of lien made up of moneys paid out for labor by a contractor acting under two separate contracts. Sweet, the lien claimant, acted as superintendent of construction of a hotel building for the Fresno Hotel Company, the contractor being Farley & Co., a corporation. Sweet had three different contracts for work on the building. One of these was made on April 1, 1911, and on this the trial court allowed a lien for $628.30. This contract of April 1, 1911, after reciting a contract of February 1, 1911, which Sweet had partly performed, and by which he had earned $358.58 more than had been paid to him and declaring that the same was canceled, saving the debt for $358.58 and a lien to Sweet on the building therefor, proceeded:

"In consideration of the above release and cancellation, and of the further payments and considerations hereinafter mentioned, Isaac Sweet hereby assumes and agrees to pay all of the wages due to carpenters and common laborers em-

ployed in the erection of the Fresno Hotel, until the same is complete, which said amount shall be returned to Isaac Sweet in the manner as follows: Seventy-five per cent of the payrolls each month, together with ten per cent commission on each weekly payroll, payable on the following month, between the first and the fifth of the month and the balance twenty-five per cent, thirty-five days after the acceptance and completion of the building, weekly payrolls to be made out by Farley & Company and signed by them and delivered to said Isaac Sweet each week, Farley & Company to have the right to hire and discharge any and all men but their names shall be placed on the payrolls when employed. Sweet to act in the capacity of superintendent and to see that the work progresses."

Speaking of this contract, the court says on page 795 of the opinion: "This on its face, is not a contract by Sweet to perform labor on the building or to have labor performed thereon by others in his employment. It is, on his part, an agreement to assume and pay all wages due to certain classes of laborers employed on the building, and on the part of Farley & Company an agreement to return to him the money advanced for that purpose. The laborers to be paid thereunder were to be hired and discharged by Farley & Company, who was to make out weekly payrolls for Sweet's information as to the amount to be paid to the men. So far as the work is concerned, Sweet's only function was to act as superintendent and to pay the wages due from the contractors to the men. He was not the employer. In effect, he was loaning money to the contractor and performing services as superintendent of the work, for which service he was to receive an amount equal to ten per cent of the wages earned by the men. The law does not allow a lien for money loaned to a building contractor to enable him to carry out his contract. (*Godeffroy* v. *Caldwell*, 2 Cal. 489 [56 Am. Dec. 360].) The lien claim states with respect to this contract, that it is for carpenter labor and common labor performed under it. This must be understood to refer to the labor performed by the men employed by Farley & Company, and whose wages Sweet paid. It does not cover compensation for his own services as superintendent. It follows, therefore, that the claim did not embrace

anything for which he was entitled to a lien and none should have been allowed thereunder.''

The contract of June 1, 1911, between Sweet and Farley & Company, which the court upheld as affording Sweet a lien for money paid out for labor of carpenters and common laborers was different from that of April 1, 1911, above referred to. The court says (page 796 of the opinion): ''The defendant claims that the same rule should apply to the contract made on June 11, 1911. By the contract of June 1st, Sweet expressly 'agrees to furnish all common labor and carpenter labor necessary to the construction and completion of said building and to pay all wages that may become due to the carpenters and common laborers . . . paying such laborers weekly or at such other times as their wages may become due.' Farley & Co. agreed 'for such labor furnished in the erection of such building' to pay to Sweet, between the first and fifth day of each month, the amount of the wages Sweet had paid to such laborers during the preceding month. The contract further declares that Farley & Co. shall make out weekly payrolls and deliver the same to Sweet at the end of each week, and that it was 'understood that all men employed, upon, in, and about said building shall be satisfactory to ''Farley & Co.,'' and that they shall have the right at all times to discharge anyone not satisfactory to them, and to replace the same by persons selected by themselves.' We cannot agree to the proposition that the contract was a mere reiteration or renewal of the previous contract of April 1, 1911. Its language was different from the previous contract in a very important particular, and was presumably made so with the purpose of changing the effect.

''It may be true, as contended by the defendant, that the actual mode of carrying on the work and paying the men after June 1st did not differ materially in appearance from that practiced before June 1st. But this similarity was not fatal to the validity, or destructive of the effect, of the new contract. The old contract was, in effect, an agreement by Sweet to advance money to pay the debts owing by Farley & Co., the new one was an agreement by him to bestow labor upon the building, hiring the men himself and paying their wages. It was a lawful contract, for

a lawful purpose. He had the lawful right to make it, notwithstanding the effect was to give him a right under the mechanic's lien law which he did not have under the contract of April 1st. The provision that Farley & Co. should have the right to discharge men that were not satisfactory to it and to replace them with other persons selected by itself did not make it the employer of the new men thus selected; it merely empowered it to make the selection of the men to be employed by Sweet. We think the plaintiff, Sweet, was entitled to a lien for the value of the labor furnished under this contract.''

The facts in the case at bar put appellant in the same position as was Sweet in the case above discussed, under the contract of April 1, 1911. In fact, Sweet was in a more favorable position for urging the privilege of a lien claimant than is appellant, for Sweet in the contract of April 1, 1911, assumed and agreed to pay all wages due carpenters and common laborers employed on the building, while here appellant does not claim that he ever agreed to pay the cost of labor and material, but on the contrary avers ''that no part or portion of any of said expenses or payrolls or wages was or were to be paid by this claimant, but that any and all thereof was and were to be paid by said Peppers Cotton Lumber Company.''

The payments for which foreclosure of a mechanic's lien is sought in this action cannot be regarded as other than advancements of money voluntarily made by appellant to the Peppers Cotton Lumber Company to pay debts owing from said company to persons other than appellant under the allegations set forth in the complaint. In view of the decisions in *Godeffroy* v. *Caldwell*, 2 Cal. 489 [56 Am. Dec. 360], *Cadenasso* v. *Antonelle*, 127 Cal. 382 [59 Pac. 765], and *Sweet* v. *Fresno Hotel Co.*, 174 Cal. 789 [Ann. Cas. 1918D, 346, 164 Pac. 788], the action of the trial court on the demurrers to the complaint in this action was the proper adjudication of the questions presented.

The judgments appealed from are affirmed.

Hart, Acting P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 24, 1928, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 21, 1928.

Richards, J., and Preston, J., dissented.