[Civ. No. 6919. Third Dist. Feb. 8, 1944.]

NELSON HOWARD, Respondent, v. SOCIETA DI UNIONE E BENEFICENZA ITALIANA (a Corporation), Appellant.

C. W. Pearson and A. B. Caminetti for Appellant.

Snyder & Snyder for Respondent.

ADAMS, P. J.—On December 10, 1937, Societa Di Unione E Beneficenza Italiana, a corporation, hereinafter referred to as the society, entered into a written agreement with the Amador County Rodeo Association, a corporation, hereinafter called the association, under the terms of which the society purported to "demise and lease" to the association the baseball field constituting a part of certain premises owned by said society, for a term of five years, with an option for an extension of five years. The rental agreed to be paid by the association was $200 per year. There was a further option for a renewal for two five-year periods after the expiration of the first ten years, at a like rental of $200 per year, plus 50 per cent of the net gate receipts of the lessee.

The recited purpose for the letting aforesaid was to enable the association to conduct livestock races and shows, and like exhibitions, on the leased premises, and particularly one rodeo each year on the day on which the society held its annual picnic in June, other exhibitions to be held on not to exceed

three additional days in each year when the society was not using the baseball field. Except for the dates upon which the association was entitled to use of the premises the unrestricted use thereof was reserved to the society, it being provided, however, that should said society make use of any improvements installed by the association, a reasonable rental of not to exceed $25 per day should be paid to the association for such use. The society reserved to itself the right to all concessions on its property except that the association was assured the exclusive right to print and sell programs of its exhibitions. Use of grandstands already on the premises was permitted to the association during its exhibitions, and the latter agreed to construct at its own cost such additional grandstands, fences, corrals, chutes and other appurtenances as might be necessary for its exhibitions.

It was mutually agreed that for the annual picnic day of the society and the rodeo of the association a campaign of publicity was desirable, the cost of which was not to exceed $500, one-half to be paid by each of the parties. Lessee was required to provide indemnity insurance to take care of damages that might become due because of accidents upon the leased premises, and to safeguard the parties against detriment from any liability that might be imposed by reason of activities resulting from the lease. The association also agreed to maintain the society and the leased premises free from claims or liens for labor or material or otherwise, the society reserving the right to post and record notices of nonliability pursuant to section 1192 of the Code of Civil Procedure. All improvements and structures placed upon the premises by the association were to belong to the society; but until the lessee's rights under the agreement were terminated the latter was to be responsible for the maintenance and repair of such improvements. It was agreed that all structural work done by the association under the lease was to be under the control of the association, and that the society should not be deemed the lessee's principal or employer, nor be deemed connected with such construction.

This instrument was not recorded, and while the society posted a notice of nonresponsibility it is apparently conceded that same was for some reason insufficient.

The association erected improvements, and became indebted to Jackson Lumber Yard in the sum of $2,731.92 for lumber and materials used in the construction of same; to the Bank

of Amador County for $1,500 advanced to it on its note dated May 31, 1938; to C. Soracco Company in the sum of $435 for various goods, wares and merchandise; to J. A. Chichizola in the sum of $182.39, also for goods, wares and merchandise; to W. S. Hartwick in the sum of $53 for services; to Piccardo Bros. in the sum of $169.03 for hauling and services, and to Spinetti Bros. in the sum of $185.60 for goods, wares and merchandise. It thereafter became insolvent. Its creditors above-named, in March and April, 1941, assigned their claims to plaintiff Howard, who brought this action against the society and the association on September 5, 1941, alleging that defendants had entered into a mutual joint adventure agreement by and through which the society became enriched by virtue of the improvements which the association had placed upon the premises of the society; that the lumber and materials, and the goods, wares and merchandise furnished by plaintiff's assignors, were used in the construction of the improvements made on the premises of the society, that the money lent by the Bank of Amador County was used in the said construction; and that the services of Hartwick and the "services and hauling" of Piccardo Bros. were "rendered in connection with and as part of" said construction. Plaintiff prayed for judgment against both defendants for the amounts of the various claims, with interest and attorney's fees on account of the note, and for interest on the various accounts, and that the judgment be declared a lien upon the premises described in the written agreement.

The association defendant defaulted in the action. The society filed its answer to which it attached the lease agreement as an exhibit. It denied that it had entered into any joint adventure with the association, and denied that it ever became indebted to the various creditors named in the complaint. The action was tried by the court sitting without a jury, and resulted in a judgment for plaintiff in the sum of $6,339.50. Said sum was declared an equitable lien upon the real property of the society (including a tract other than that included in the lease agreement, being one leased by the association from Allen Estate Company) and further provided that unless said judgment was paid within sixty days the property might be sold to satisfy said judgment.

In its findings the court found that plaintiff's assignors had furnished *the association* with the materials, supplies and

money for the purpose of constructing the improvements, and that same were actually used in the construction thereof; that the society had been enriched by virtue of the improvements which the association had placed upon the premises, in an amount of approximately $12,000, all without cost to it.

There is no finding that the various creditors of the association, at the time the association became indebted to them, had any knowledge of the agreement between the society and the association, or that in extending credit to the association they relied upon any such agreement, or upon the society, or upon its ownership of any of the land.

No mechanics' liens were filed by plaintiff or his assignors. The theory upon which plaintiff premised the liability of the society was that the agreement between it and the association created a special partnership or joint adventure, and that by virtue of said relationship the society became liable for the debts of the association; and that the society received the benefit of the improvements placed upon the property and should therefore be held liable for the debts of the association. There is, however, no finding that the society and the association became joint adventurers.

The judgment appears to rest solely upon the proposition that the society has been benefited by the improvements and that therefore it should pay for them. While it is entitled "Judgment and Decree of Foreclosure of Equitable Lien," it declares that there is due to plaintiff from defendants the sum of $6,339.50, with costs and interest. Both defendants are therefore held personally liable for the debt.

Appellant here contends that the agreement between the association and the society did not have the effect of making them joint adventurers; that the creditors of the association, by failing to perfect liens under the mechanics' lien law, lost any right they may have had to any lien upon the property of the society; that no privity of contract between the creditors and the society has been found or shown by the evidence; that the creditor bank which lent money to the lessee would in no event be entitled to a lien; and that the most that said creditors or any of them had was a right to a lien, which right was not assignable.

Respondent, in this court, rests his case upon the proposition that the association and the society became joint adventurers, stating in his brief that "this is not a case where a lessee has made improvements upon lessor's property, but

that the improvements were made for the mutual benefit of the parties pursuant to a joint adventure between them.'' He does assert that ''where the relationship between the parties is a lease and the owner does not give notice of his non-responsibility, he may be estopped to deny his responsibility for the debt''; but he recites no evidence upon which an estoppel can be premised in this case.

The first question for determination is whether the agreement between the parties constituted them joint adventurers.

In *Larson* v. *Lewis-Simas-Jones Co.*, 29 Cal.App.2d 83, 89 [84 P.2d 296], some of the features of a joint enterprise are said to be: (a) a community of interest in the object of the undertaking; (b) an equal right to direct and govern the conduct of each other with respect thereto; (c) a share in the losses if any; (d) close and even fiduciary relationship between the parties. (Citing *State* v. *Superior Court*, 108 Wash. 443 [184 P. 348].) In the cited case the court said that the instrument there in question created only the relation of landlord and tenant; that it lacked many of the essentials of a joint adventure or copartnership; that by the instrument two farms were *leased*, for the use of which the lessor was to receive one-third of the crops; that the tenants were to do all the work and bear the expense; that they had no authority to charge any of such expense to the lessor; the tenants were forbidden to permit any liens for work or otherwise; there was no provision for sharing losses, if any; and that an agreement to share losses is the ordinary test of a partnership.

In *Beck* v. *Cagle*, 46 Cal.App.2d 152, 161 [115 P.2d 613], the court held that to constitute a joint enterprise the parties must have a community of interest in the purposes of the undertaking and equal authority or right to direct the movements and conduct of each other in connection therewith. In *Stoddard* v. *Goldenberg*, 48 Cal.App.2d 319 [119 P.2d 800], it was said that an indispensable feature of a joint venture is an agreement by the parties to it to share jointly in the profits and losses. Also see *Enos* v. *Picacho Gold Min. Co.*, 56 Cal.App.2d 765, 771 [133 P.2d 664]. In *Quinn* v. *Recreation Park Association*, 3 Cal.2d 725, 728 [46 P.2d 144], the court said that in order to establish the existence of a joint adventure there must be proof of a community interest, and a sharing of profits. (Citing 14 Cal.Jur. 761; *Dempsey-Kearns Theatrical etc. Enterprises* v. *Pantages*, 91 Cal.App.

677 [267 P. 550].) In *United Farmers Association* v. *Sakiota,* 7 Cal.App.2d 559, 560 [46 P.2d 770], it is stated that an essential element of a joint adventure is that the parties share in the profits and losses.

In 30 Am.Jur. 681, section 7, the relation of joint adventurers is said to be created where two or more persons combine their money, property, or time in the conduct of some particular line of trade, or for some particular business deal, agreeing to share jointly, or in proportion to the capital contributed, in the profits and losses, assuming that the circumstances do not establish a technical partnership. Also see page 682, section 11, where it is stated that a joint proprietary interest and a right of mutual control over the subject matter of the enterprise or over the property engaged therein is essential to a joint adventure.

■ The usual test of a partnership between the parties to a joint adventure is their intent to become partners. Even where there is a sharing of profits the conclusion does not follow that there is a joint adventure relationship where there is no joint participation in the management and control of the business, which is an essential element of a partnership. (*Spier* v. *Lang,* 4 Cal.2d 711, 715 [53 P.2d 138].)

■ Viewed in the light of the foregoing authorities the agreement between the association and the society is entirely lacking in the essential elements of a joint undertaking of the enterprise of the association. There was no agreement to share gains and losses, but on the contrary the association agreed to hold the society free from claims or liens and to provide its own insurance; there was reserved to the society no right to direct or govern the conduct of the association, and no such right was ever asserted or exercised; the association was to pay a stipulated rental for the use of the field, regardless of its profits or losses, and whenever the society used the facilities which were to be constructed by the association it was required to pay to the association a rental therefor. While the cost of joint publicity for the annual picnic and rodeo was to be shared, the cost thereof was limited by the agreement, and the fact that this provision was inserted in the agreement raises an inference that other expenses were not to be shared jointly. There is neither expression nor intimation that the two organizations contemplated other than completely independent operations, or that they intended to become partners.

There is in fact no claim on the part of the association that it was engaged in a joint adventure with the society. Plaintiff produced as a witness the president of the association who testified that the relationship of the association and the society was embraced in the agreement, and that there was no other agreement between the parties; and there was testimony that no one connected with the society had anything to do with directing the building of the improvements made by the association.

The next question for consideration is whether, though the agreement between the parties did not contemplate nor constitute a joint adventure, anything was established by the evidence in the case that can be said to have estopped the society from denying liability for the debts of the association.

It is not alleged, nor is it found by the trial court, that in furnishing the association with the goods sold and money lent, any reliance was had by the creditors upon any partnership or joint adventure arrangements between the society and the association. The finding is that advances were made to the association; and the evidence establishes that the agreement between the society and the association was not in fact relied upon by any of the creditors. Several of them were called as witnesses and testified that the credit was extended to the association. No one of them testified that in extending such credit he was influenced by or relied upon the agreement between the association and the society, or upon any act or representation by the society, or upon the fact that the society owned the land upon which the improvements were constructed by the association. Mr. Steele, head of the Jackson Lumber Yard, stated that when the material furnished by his firm was put on the ground he did not know who owned the ground but thought the Allen Estate Company owned some of it; that he did not know what the relationship was between the association and the society. Other creditors were called, most of whom were members of the association, and no one testified as to any reliance upon the society for payment or any liability on its part, or reliance upon the lease agreement or the ownership of the property by the society. There is not an iota of testimony which can be relied upon as creating an estoppel against the society in favor of any of the creditors. An opinion filed by the trial court indicates that the liability of appellant is premised solely upon the fact that it became the owner of the improvements and the

assumption that it was thereby enriched—and enriched not to the extent of any value which said improvements may have added to its premises, as no evidence of any such value was tendered—but enriched to the full extent of the indebtedness incurred by the association. Plaintiff merely introduced a financial statement of the association as of January 1, 1941, which set forth its total investment as $12,377.99 and an unpaid indebtedness of $5,906.39; and for this balance the society was held jointly liable with the association.

No mechanics' or other liens were filed by anyone; and if, in the absence of such filing, it can be said that where credit is extended to A, who uses moneys lent and goods sold to him by B to make improvements upon C's lands, B, without further showing, may recover from C and acquire a lien upon C's land without complying with the statutes providing for the filing of mechanics' liens, such statutes would be useless. (See *Houston Lumber Co.* v. *Hunt*, 96 Kan. 778 [153 P. 554].) It is well established that the right to a mechanics' lien depends upon a compliance with the requirements of the statutes (*Stanislaus Lumber Co.* v. *Pike*, 51 Cal.App.2d 54, 59 [124 P.2d 190] ; *Holm* v. *Bramwell*, 20 Cal.App.2d 332, 334 [67 P.2d 114] ; *Weaver* v. *Atlantian Construction Co.*, 84 Cal.App. 161, 164 [258 P. 114] ; *Wilson* v. *Nugent*, 125 Cal. 280, 284 [57 P. 1008] ; *Santa Monica L. & M. Co.* v. *Hege*, 119 Cal. 376, 379 [51 P. 555] ) ; and the right to such a lien is lost by failure to commence an action within the time provided by statute (Code Civ. Proc., sec. 1190; *Hickman* v. *Freiermuth*, 21 Cal.App. 629 [132 P. 772] ).

In *Burr* v. *Peppers Cotton Lumber Co.*, 91 Cal.App. 268, 273 [266 P. 1025], it is said, quoting from 40 C.J. 53, section 14, that provisions relating to the creation, existence or right to mechanics' liens, being in derogation of the common law, should be strictly construed. And where parties have failed to comply therewith relief has been denied in numerous cases. (See *Walker* v. *Hauss-Hijo*, 1 Cal. 183, 186; *Goss* v. *Strelitz*, 54 Cal. 640, 644; *Johnson* v. *La Grave*, 102 Cal. 324 [36 P. 651] ; *Pacific Mfg. Co.* v. *Rasmussen*, 42 Cal.App. 742, 744, 746 [184 P. 54] ; *Norton* v. *Bedell Engineering Co.*, 88 Cal. App. 777 [264 P. 311] ; *Pacific Mutual L. I. Co.* v. *Fisher*, 106 Cal. 224, 234 [39 P. 758].)

We are cited to no authorities which justify a conclusion that under evidence such as was adduced in this case appellant is liable for the debts of the association merely because

the structures were erected upon its land with its consent. There is no evidence that plaintiff's assignors relied upon the agreement between the society and the association, or upon any conduct or representation or inducement on the part of the society (*Crescent Lumber Co., Inc.* v. *Borchers,* 59 Cal. App.2d 318 [138 P.2d 779]), or upon the fact that the land upon which the structures were erected belonged to the society; and, as a matter of fact, a portion of the land upon which same were erected belonged at that time to the Allen Estate Company from whom the association had a lease entered into in January, 1938, which provided that the association might erect improvements upon the demised premises (which adjoined those included in the lease with the society), with the privilege of removing them at any time prior to the termination of the lease. The land covered by this lease was subsequently purchased by the society, but did not belong to it when the improvements thereon were erected. And yet by the judgment in this action the society is held liable for the cost of the improvements placed thereon, and both tracts are held subject to lien.

There is no evidence that the society ever assumed or agreed to pay any of the debts of the association. The testimony is to the contrary. And there is no evidence from which any contract between the society and the creditors can be implied, or upon which an equitable lien can be premised.

That no right to a lien arose in favor of the bank which lent money to the association is particularly to be noted. (*Burr* v. *Peppers Cotton Lumber Co.,* 91 Cal.App. 268, 274 [266 P. 1025], and authorities there cited, especially *Godeffroy* v. *Caldwell,* 2 Cal. 489 [56 Am.Dec. 360].)

Also, in this case, plaintiff is the assignee of the claims of the various creditors of the association, and it is urged by appellant that the most that such creditors could have had was a *right* to a lien, and that such right was not assignable. This contention appears to be supported by *Mills* v. *La Verne Land Co.,* 97 Cal. 254 [32 P. 169, 33 Am.St.Rep. 168]; *McCrea* v. *Johnson,* 104 Cal. 224 [37 P. 902]; *California P. C. Co.* v. *Wentworth Co.,* 16 Cal.App. 692, 711 [118 P. 103, 113]; *Burr* v. *Peppers Cotton Lumber Co., supra.* (Also see note in 83 A.L.R. 11.)

It is a maxim of jurisprudence that the law helps the vigilant before those who sleep on their rights (Civ. Code, sec. 3527); and it is well said in *De Mattos* v. *McGovern,* 25 Cal.

App.2d 429, 433 [77 P.2d 522], that "Equity will not come to the aid of one who, through his own delay and own fault, has lost the remedy which the law has provided."

. We are unable to find any theory either of law or equity upon which to sustain the judgment of the trial court, and it is therefore reversed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied March 6, 1944, and respondent's petition for a hearing by the Supreme Court was denied April 6, 1944.