CRISTÓBAL PUIG ET AL., Petitioners, *v.* TAX COURT OF PUERTO RICO, Respondent.

No. 61.  Argued November 13, 1945.—Decided February 21, 1946.

692

*Damián Monserrat, Jr., G. de la Haba,* and *Rafael Baragaño, Jr.,* for petitioners. *E. Campos del Toro, Attorney General, A. D. Marchand Paz* and *Elmer Toro Lucchetti,* attorneys of the Division of Tax Cases of the Department of Justice, for intervener, Treasurer of Puerto Rico, respondent in the main proceeding.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

Cristóbal Puig and Gabriel Abraham acquired by purchase, in joint ownership, house number 48, Salvador Brau Street, and house number 43–45, San Justo Street, of this city. Thereafter, a partnership was constituted by Cristóbal Puig, Gabriel Abraham, and José Gayá, the first two leasing both houses to said partnership. In the year 1940 Cristóbal Puig and Gabriel Abraham filed their respective income tax returns, wherein they included the income which they had obtained during that year from their respective shares in the houses leased to the partnership. The Treasurer of Puerto Rico was of the opinion that the relationship existing be-

tween them, in so far as the houses were concerned, was not one of mere co-tenancy, but of persons engaged in a joint adventure and that, therefore, they should pay the 17 per cent tax provided by § 28 of the Income Tax Act, as amended by Act No. 31 of April 12, 1941 (Laws of 1941, p. 478). Consequently, the Treasurer sent them a notice of deficiency amounting to $1,219.27, plus $116.64 as interest and $304.82 as penalty.

On March 23, 1943, the petitioners sought from the Treasurer a reconsideration of the deficiency determination which was denied on March 31 of the same year, whereupon they appealed to the Tax Court of Puerto Rico on April 22, 1943, after furnishing the proper bond.

On April 13, 1945, that tribunal rendered a decision dismissing the complaint filed by the petitioners, who were served with a copy of said decision on April 18, 1945, and on June 8 last the petitioners instituted the present proceeding in this court.

The first question to be decided is the one raised by the Treasurer to the effect that this court lacks jurisdiction to take cognizance of the case because the petition for certiorari was filed after the expiration of the statutory period. His contention is predicated upon the fact that where, as in the present case, the Tax Court dismisses the complaint, the Treasurer does not have to file a new computation; that consequently the decision of that tribunal is final from the time that the parties are notified of the dismissal of the complaint; and that from the service of said decision until the filing of the proceeding in this court, more than thirty days provided by law to review the decision of the Tax Court have elapsed.

The theory of the Treasurer is grounded on a false premise. Even in those cases where the Tax Court dismisses the complaint, a new computation has to be made, since from the time that the Treasurer notifies the imposition of the

tax or the deficiency, if any, until the dismissal of the complaint, the amount which was originally notified by the Treasurer to be paid by the taxpayer draws interest, and, therefore, the amount finally owed by the taxpayers at the time the Tax Court dismisses the appeal is necessarily greater than the amount originally notified by the Treasurer. This being so, the computation must be made in order that the taxpayer should know with certainty the exact amount that he must pay to the Treasurer under protest before resorting to this court. The necessity for the computation becomes evident in the present case where the original notice of deficiency of March 10, 1943, amounted to $1,640.73, including interest, while the computation notified on March 3, 1945, after the Tax Court dismissed the complaint, amounted to $1,524.09, principal, plus $280.43 interest, making a total of $7,804.52.

The necessity of filing a new computation being established, let us consider the provisions of Rule 29 of the Rules of Procedure of the Tax Court, effective since August 15, 1943. Pursuant to this rule, the decision of the Tax Court is not final until the expiration of a ten-day period, counted from the filing of the computation by the Treasurer, if no opposition is filed by the taxpayer, or if such an opposition is filed by the taxpayer and decided by the court, from the time the secretary notifies the parties of the finality of the decision.

In the present case the decision of the Tax Court dismissing the complaint was rendered on April 13, 1945, and on May 3 following the Treasurer filed the computation. The appellants did not file any opposition thereto, and it was not until May 24 that the secretary notified them of the finality of the decision. Since the appellants filed their petition on June 8, that is, fifteen days after receiving notice of the finality of the decision, it is evident that the proceeding was instituted within the statutory period of thirty days.

Having decided this jurisdictional question, we now turn to consider the only question raised by the appellants,

to wit, whether the relationship existing between them, with respect to the houses, is that of mere co-owners or, as held by the Tax Court, that of joint adventures.

The law does not contain a definition of the joint adventure which, according to § 2(a) (3) of the Income Tax Act, might be considered as being included within the term "parnertship."[1]

It is well established that the mere community of property does not constitute a joint adventure. *Chisholm* v. *Gilmor*, 81 F.(2d) 120 (C.C.A. 4th, 1936) and *Bowmaster* v. *Carroll*, 23 F.(2d) 825 (C.C.A. 8th, 1928). To constitute a joint adventure the co-owners must, without actually forming a partnership,[2] contribute their condiminia and engage in some specific transaction for profit; they must share in profits and losses; there should exist some fiduciary relationship as between partners so that there may exist a mutual agency in any transaction carried out within the scope of the joint adventure, each one having a voice and vote in the management of the business, although they may agree that one or more of them may act on behalf of the others in the conduct of the enterprise, as is the case in partnerships. *Porter* v. *Cooke*, 127 F.(2d) 853 (C.C.A. 5th, 1942); *Beck* v. *Cagle*, 115 P. (2d) 613 (Cal. 1941); *Detachable Bit Co.* v. *Timken Roller Bearing Co.*, 133 F.(2d) 632 (C.C.A. 6th, 1943); *Howard* v. *Societa Di Unione E Beneficenza Italiana*, 145 P. (2d) 694 (Cal. 1944); 35 Mich. L. Rev. 297 and 58 U. of Pa. L. Rev. 309.

Consistent with the principles set forth above, it has been held in New York that "a joint adventure" is a limited part--

---

[1] Section 2(*a*) (3) provides:

"The term 'partnership' includes civil, business, industrial, agricultural and professional partnerships of or any other kind, whether or not its constitution is set forth by public deed or private document; and it shall include, further two or more persons, under a common name or not, engaged in a joint venture for profit."

[2] For a comparative study of partnership contracts and the community of property, see *Carle* v. *Benitez*, 46 P.R.R. 182.

nership to which the rule of law governing partnerships apply. *George W. Haxton & Son* v. *Rich.,* 47 N.Y.S. (2d) 501 (1944), and *Ross* v. *Willett,* 76 Hun. 211 (N.Y. 1894). And in Louisiana, where the Civil Law prevails, it has been held that there is a joint adventure where two or more persons combine their property or labor to carry out a single business or enterprise for joint profits, creating the status of a partnership, though the facts do not show a formal partnership. It was further held that while a joint adventure is not identical with a partnership, it is analogous to a partnership, and is controlled largely by the principles applicable to partnerships. *McCann* v. *Todd,* 14 So. (2d) 469 (La. 1943) and *Young* v. *Reed,* 192 So. 780 (La. 1939).

Let us now examine the facts of the case at bar in order to determine whether the relationship between Cristóbal Puig and Gabriel Abraham, with respect to the two houses, is, as held by the Tax Court, that of joint adventurers.

It appears from the evidence that when the partnership Puig Abraham & Co., *S. en C.,* was constituted the two co-owners leased their respective undivided interests in the houses, without there being any showing that either of them had a voice or control in the management of the condominium of the other. On the contrary, the evidence discloses that they acted independently and that their activity was confined to receiving the income from their property, that is, the lease rental of their respective condominia without performing any other transaction in connection therewith. The legal effect of having leased their respective condominia to a partnership of which they were members, is the same as if they had leased it to an outsider, for it does not appear from the evidence that they contributed their condominia to said partnership.

Since the essentials to constitute a joint adventure are lacking in this case, the community of property existing between the appellants is not included in the aforesaid § 2(a)

(3) and, consequently, it is not subject to the 17 per cent tax provided by § 28 of the Income Tax Act, as amended by Act No. 31 of February 12, 1941.

For the reasons stated, the decision sought to be reviewed must be annulled and the case remanded to the Tax Court in order that another decision be rendered in conformity with the principles set forth in this opinion.

