COMMUNITY OF JOSÉ FERNÁNDEZ, ETC., ET AL., Plaintiffs and Appellants, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. R-67-1.     Decided February 16, 1968.

*Rafael Martínez Álvarez, Jr., Víctor M. Fusté,* and *Armando Lasa Ferrer* for appellants. *J. B. Fernández Badillo, Solicitor General,* and *Lolita Miranda Escudero, Assistant Solicitor General,* for appellee.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Ramírez Bages.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The Secretary of the Treasury prepared ex officio certain income tax returns of the "Community José Fernández Rodríguez (Partnership)." They were notified of deficiencies in the returns corresponding to the years 1959, 1960 to 1963. The heirs of José Fernández Rodríguez had included in their individual returns the income which corresponded to each one of them from two buildings they possessed in the city of Caguas. The Secretary sustains that they should have filed partnership or joint venture returns. Thus, the question in issue is whether the relationship which exists between the co-owners is a partnership, or on the contrary they were merely joint owners. There is no controversy as to the facts, only, as to their interpretation.

The parties stipulated the facts. The trial judge sets them forth thus:

"José Fernández Rodríguez and his wife Prima Lema Cuervo were owners of two properties situated at 73 and 75 Betances Street, at the corner of Muñoz Rivera of the city of Caguas, Puerto Rico.

"When José Fernández Rodríguez died, his heirs were his widow Prima Lema Cuervo and his children José, Francisco, Manuel, María C., María Dolores, and Jesús Fernández Lema.

"After the inheritance tax was paid, the partition, liquidation, and adjudication of the inheritance was executed by deed No. 30, of September 15, 1938, before Notary Rafael Cintrón Lastra.

"The widow was awarded 50% of each property, since she waived the usufructuary quota. One-sixth of the remaining 50% of each one of said properties, corresponded to each one of the children.

"Prior to 1959, the plaintiffs undertook to tear down the building situated at 75 Betances Street, and in its place they constructed a $60,000 building, by contribution of $10,000 from each one of them.

"From that date, the proceeds of this property were distributed among the plaintiffs, according to the contribution of each one of the participants, the widow having waived her share by deed No. 37 of April 14, 1954, before Notary Alfonso Miranda Cárdenas, ratified by deed No. 62 of October 21, 1954, before the same Notary.

"As to the property situated at 73 Betances Street, it was reconstructed by the plaintiffs before 1959. With respect to this building, the widow did not contribute any money but she withheld her interest therein. The benefit of each plaintiff was determined according to their investment in the reconstruction, resulting approximately in 1/6.

"The two properties we have mentioned are located on land which is property of the Municipality of Caguas, Puerto Rico.

"It is fitting to indicate that once the partition of inheritance, to which we previously referred, was executed, the aforementioned community was administered by Manuel and Jesús Fernández Lema according to the deeds of power of attorney Nos. 18 and 89 executed before Notaries Joaquín Vendrell Jousert and Alfonso Miranda Esteves, respectively, and that there was a checking account, in the bank, in the name of the Heirs of José Fernández Rodríguez, in which they deposited the income resulting from the rentals yielded by said properties. All the expenses of these properties were charged to this checking account.

"According to the accounting books, the debts were deducted from the income received, dividing the remainder among the members of the so-called *Sucesión* (Heirs of).

"It also appears that the proxies Manuel Fernández Lema and Jesús Fernández Lema were the ones authorized to withdraw the funds from the aforementioned checking account."

The Income Tax Act of 1954 defines the partnership as that which "includes civil, business, industrial, agricultural and professional partnerships or of any other kind, general or limited, whether or not its constitution is set forth by public deed or private document; and it shall include, further, two or more persons, under a common name or not, engaged in a joint venture for profit." 13 L.P.R.A. § 3411(a)(3), 1962 ed.

■ In *Puig* v. *Tax Court*, 65 P.R.R. 691 (1946), in considering a case which involved the same question and a similar provision to the one copied above being in force, we stated: "It is well established that the mere community of property does not constitute a joint adventure. *Chisholm* v. *Gilmor*, 81 F. (2d) 120 (C.C.A. 4th, 1936) and *Bowmaster* v. *Carroll*, 23 F. (2d) 825 (C.C.A. 8th, 1928). To constitute a joint adventure the co-owners must, without actually forming a partnership, contribute their condominia and engage in some specific transaction for profit; they must share in profits and losses; there should exist some fiduciary relationship as between partners so that there may exist a mutual agency in any transaction carried out within the scope of the joint adventure, each one having a voice and vote in the management of the business, although they may agree that one or more of them may act on behalf of the others in the conduct of the enterprise, as is the case in partnerships. *Porter* v. *Cooke*, 127 F. (2d) 853 (C.C.A. 5th, 1942); *Beck* v. *Cagle*, 115 P. (2d) 613 (Cal. 1941); *Detachable Bit Co.* v. *Timken Boller Bearing Co.*, 133 F. (2d) 632 (C.C.A. 6th, 1943); *Howard* v. *Societa Di Unione E Beneficenza Italiana*, 145 P. (2d) 694 (Cal. 1944); 35 Mich. L. Rev. 297 and 58 U. of Pa. L. Rev. 309."

In the *Puig* case the facts established that two persons bought a building which they later leased and they divided the rent between them. In *Buscaglia* v. *Tax Court*, Certiorari 73, decided by a per curiam opinion on April 12, 1946, we went a bit further. The facts were very similar to those of the present case. A house was torn down because it was in ruinous conditions and the owners, who had inherited it, erected an apartment building, which they leased and from which they collected rent. In deciding the question raised, we stated that "those facts only demonstrate that the taxpayers inherited a parcel of land in which some houses in ruinous conditions were situated, which were torn down, and replaced

by a new building, which is possessed in community. These facts, by themselves, do not establish a joint venture for profit. . . ."

In *Vías* v. *Tax Court*, 67 P.R.R. 459 (1947), "the petitioners inherited from their father in 1938, a rural property, a house situated at 21 Cruz Street and one-half interest in a house at 42 Salvador Brau Street both in San Juan. The Tax Court, according to its opinion, found that '. . . considering the ruinous state of the house at 21 Cruz Street and not being satisfied with the rentals accruing therefrom, they proceeded to destroy a two-story building which was erected there at the time of their father's death and at the time of the partition of the property and erected in its place a new four-story building. For this purpose they took $24,000 from their mother in exchange of a life pension and the amounts of $15,000 and $13,000 and $750 from the Banco Popular de Puerto Rico. An engineer-contractor made the corresponding plats and the specifications of the work to be done. The original contract which they signed for this work amounted to $37,000 and $11,900 for additional work. They have an attorney in fact who, as their representative, leases the apartments of said building, makes the contracts and pays for the repairs and other expenses related thereto and every month sends to each one of the appellants their share of one-third of the net proceeds of the rentals of said building.' "

With these facts, so similar to those of the case at bar, we held that the relationship existing between the heirs of Juan F. Vías was not that of a joint venture. In deciding it, we stated:

"The Tax Court distinguishes *Buscaglia* v. *Tax Court, supra,* from the case at bar in that in the former the building was constructed with money from the estate, and in the present case, with money belonging to the members of the estate. In making this distinction said court did not cite any authority. In our judgment, the origin of the money does not determine whether

the relationship existing between the owners is that of mere co-owners or if it is that of joint adventurers, and neither does it determine whether it is that of partnership. The rule is established in *Puig* v. *Tax Court, supra,* to the effect that there should exist some fiduciary relationship as between partners so that there may exist a mutual agency in any transaction carried out within the scope of the joint adventure, each one having a voice and vote in its management, although they may agree that one or more of them may act as manager of the others in the conduct of the business, as in the case of partnerships. Moreover, the facts in the *Puig* case show that Cristóbal Puig and Gabriel Abraham acquired by purchase, in joint ownership, two houses in San Juan and later leased them to a partnership, but that 'their activity was confined to receiving the income from their property, that is, the lease rental of their respective condominia. . . .' It should be presumed that when Puig and Abraham purchased the houses they did so with their own money, but this fact, in itself, does not determine that when they leased their property and received their rentals they established a joint adventure for profit."

■ It is convenient to point out that aware of our opinion set forth in *Puig, Buscaglia,* and *Vías,* the Legislative Assembly, as we have seen, did not change the concept of the term "partnership" in approving the new act in 1954. The Regulations approved to enforce the act did not change either the concept of the term "joint venture" which we interpreted in those cases. The Regulations establish:

"For the purpose of income taxation, partnerships are, in general, treated in the same manner and are subject to the same provisions as corporations. In other words, a partnership is required to make a return of its income as an entity, and the normal tax and surtax is paid upon the net income, subject to tax, or the partnership. Included within the term 'corporation' as used in the Act are limited partnerships, joint stock companies, limited liability joint stock companies, private corporations and insurance companies, and any other associations receiving income or making profits taxable under the Act. The term 'partnership' is defined to include not only civil, business, industrial, agricultural, or professional partnerships, but also all other

partnerships, and it includes two or more persons engaged in a joint venture for profit."

The rule established in *Puig* and ratified in *Vias* is in accordance with the treatment which similar relationships have received in the application of the Federal Income Tax Act.

Although in the federal jurisdiction an income tax is not imposed on the partnership as such as in our Act, 13 L.P.R.A. § 3013 *et seq.*, 1962 ed., the partnership receives a particular treatment, see *Newberger* v. *Commissioner*, 311 U.S. 83, 88 (1940) ; Rabkin and Johnson, *Federal Taxation of Partnerships*, 55 Harv. L. Rev. 909 (1942) ; 6 Mertens, Law of Federal Income Taxation, § 35.01 (1957) ; Jackson *et al.*, *The Internal Revenue Code of 1954: Partnership*, 54 Colum. L. Rev. 1183 (1954), it being important to determine whether the business relationship existing between two or more persons, constitutes a partnership or whether on the contrary it is a mere relationship of co-owners or joint owners. In *Estate of Edgar S. Appleby*, 41 B.T.A. 18 (1940), affirmed in *Commissioner of Internal Rev.* v. *Appleby's Estate*, 123 F.2d 700 (2d Cir. 1941) the question was raised, when the heirs of Appleby tore down a building which they had inherited, and in its place erected a gasoline station which they later leased. In deciding the question the problem involved was stated thus:

"The respondent argues that the petitioners, tenants in common of the property inherited from their father, and conceded to be not partners under New York law, were operating the property as a business enterprise and were therefore within the statutory category of partnership. He concedes that petitioners were not a syndicate or a pool; but says that they 'constitute a group,' that 'by the decision to erect and operate the garage . . . they became engaged in a joint venture,' and that 'the all-inclusive "other unincorporated organization" ' is sufficiently broad to include them. The statutory term partnership, he says, 'is all embracing of any business or financial operation

carried on by two or more individuals other than as a trust, corporation or estate.'

"The ownership of real property by tenancy in common is an estate so old and well-known that it is impossible to believe that it was intended to be included in the statutory catalog of partnerships by such a general term as 'group,' 'joint venture,' or 'other organization.' Never, so far as we are advised, has it been regarded taxable as a unit, although its existence has always been recognized. Cf. I. T. 1604, II-1 C. B. 1 (1923); I. T. 2082, II-2 C. B. 176 (1924). If it were now to be held a statutory partnership because of the close relations of the tenants and their common interest in property it would be difficult to exclude from the statutory term other relations having similar attributes, such as marital communities . . . cf. *Poe* v. *Seaborn*, 282 U.S. 101; *Tyler* v. *United States*, 281 U.S. 497; *Champlin* v. *Commissioner*, 71 Fed. (2d) 23. This the Commissioner does not expressly suggest, and there should be some fairly clear authoritative support for such an important and far reaching innovation, even though on the other hand the statutory term is not to be narrowly or rigidly construed. Cf. *Morrissey* v. *Commissioner*, 296 U.S. 344; *Pinellas Ice & Cold Storage Co.* v. *Commissioner*, 287 U.S. 462.

"Although it will probably continue to be difficult to classify many of the imaginable varieties of businesses and interests in which more than one person share, there is aid in the report of the Senate Finance Committee proposing the 1932 statute. This clearly indicates that the new statute was intended primarily to provide a more definite category for syndicates, and for organizations similar to them, to pools, and to joint ventures, the taxation of the income of which had been troublesome. . . . Whether it could be said as to income from the operation of a trade or business by an organized group of tenants in common is not to be decided until the question arises in such a case."

In *Lulu Lung Powell*, 67,032 P-H Memo TC decided February 20, 1967, the Federal Tax Court recently had before it a situation similar to the case at bar. Several brothers and sisters owned twelve parcels of land which they leased, and hired someone to collect the rents. In addition to

making certain improvements they filed a partnership income tax return. The court, after citing the *Appleby* case, stated:

"The same rationale is applicable in this case. If we found a partnership on these few facts, we might very well destroy the separate validity for tax purposes of almost all forms of co-ownership. The weakness of respondent's position is made patent by the innocuous facts that he has had to emphasize to show business activity. We think his position was much sounder in Lena Hahn, 22 T.C. 212 (1954), where, on somewhat similar facts, including the filing of a partnership return, and where one of the tenants in common personally managed the property and was compensated for her activities, we sustained respondent's determination of no partnership. Here we likewise find that no partnership existed in 1960 between petitioner and her brothers and sisters with respect to the properties held by them as tenants in common under the name of the Estate of Dora Lung."

The Federal Regulation in force is more explicit and embracing than our regulation. It provides:

"(a) *Partnership*—(1) *In general.* The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization through or by means of which any business, financial operation, or venture is carried on, and which is not a corporation or a trust or estate within the meaning of the Code. The term 'partnership' is broader in scope than the common law meaning of partnership, and may include groups not commonly called partnerships. See section 7701(a)(2). See regulations under section 7701(a)(1), (2), and (3) for the description of those unincorporated organizations taxable as corporations or trusts. A joint undertaking merely to share expenses is not a partnership. For example, if two or more persons jointly construct a ditch merely to drain surface water from their properties, they are not partners. Mere co-ownership of property which is maintained, kept in repair, and rented or leased does not constitute a partnership. For example, if an individual owner, or tenants in common, of farm property lease it to a farmer for a cash rental or a share of the crops, they do not necessarily create a partnership thereby. Tenants in common, however, may be partners if they actively carry on a trade, business, financial operation, or venture and divide the profits

thereof. For example, a partnership exists if co-owners, of an apartment building lease space and in addition provide services to the occupants either directly or through an agent." Cites: § 1761-1, Terms Defined, Title 26 Code of Federal Regulations, Internal Revenue (Revised as of Jan. 1967).

We have seen that in accordance with *Puig, Vías, Appleby,* and *Powell,* neither the source of the funds used in the construction of the building, nor the fact that they have a proxy, as well as the fact that they have a common bank account, is in any way controlling to decide whether the relationship between two or more persons is a partnership or is merely a community of property. The fact that they enjoy the property in usufruct is not conclusive either. Act No. 53 of 1928 in its § 70 authorized the granting of the usufruct in perpetuity to the grantee and their successors in title. See *Jiménez* v. *Álvarez,* 69 P.R.R. 299–306 (1948). Following the decision of the aforementioned cases, we must conclude that the activities in which the members of the Community of José Fernández were engaged, and which have been object of consideration herein, do not constitute a joint venture pursuant to the Income Tax Act.

The case of *Heirs of Castillo* v. *Secretary of the Treasury,* 83 P.R.R. 94 (1961), on which the trial court bases its decision, is clearly distinguishable. The heirs of Castillo administered a number of businesses: sugarcane plantations, cattle breeding, truck gardening, rents of houses, and the excavation and sale of stones, which definitively placed their relationship within the juridical concept of the joint venture.

The judgment appealed from will be reversed.