[Civ. No. 13192.   Second Dist., Div. Two.   Dec. 5, 1941.]

J. B. STODDARD, Plaintiff and Respondent, v. GEO. B. GOLDENBERG, Appellant; BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Cross-Complainant and Respondent.

Schell & Delamer and Le Roy N. French for Appellant.

Salisbury, Robinson & Himrod, B. R. Ware and W. K. Lindsay for Respondents.

WOOD (W. J.), J.—Plaintiff commenced this action to recover on three checks in the principal sum of $2500 each which had been executed by defendant in favor of plaintiff. By cross-complaint defendant sought to rescind the transaction in which the checks were given because of the alleged false and fraudulent representations of plaintiff, and to recover $16,500 paid by defendant to plaintiff as a part of the transaction. Defendant has appealed from a judgment in favor of plaintiff on both the complaint and the cross-complaint.

The evidence, which was conflicting, when viewed in the light most favorable to plaintiff, discloses the following facts: Plaintiff, who resided in Dallas, Texas, was engaged in the oil business and had known defendant for approximately fifteen years prior to the date of the transaction involved in the litigation. Several days prior to March 14, 1938, plain-

tiff incurred gambling losses of $4,000 at the Clover Club in Los Angeles and by arrangement with defendant (whose connection with the club is not shown) paid the loss by delivering his personal check to defendant. A few days later the parties had a conversation in which plaintiff stated that he was negotiating for additional acreage in the K. M. A. oil field in Texas and proposed to drill a well on the land; and that if he was successful in consummating such negotiations, he would let defendant have a certain number of acres for a stated price. At this time the parties discussed generally the terms and conditions under which defendant was to acquire the acreage. Defendant indicated that he was favorable to the deal as outlined and said to plaintiff: "O.K., put it in writing and send it to me." On March 14, 1938, plaintiff sent the following letter to defendant:

"Referring to and confirming our conversation of this afternoon, we are in the process of negotiating for two hundred and forty acres described approximately as follows: . . .

"If we are successful in consummating our present negotiations for this acreage, we will assign to you two hundred of the above two hundred and forty acres upon the payment of twenty four thousand dollars ($24,000) cash and twenty four thousand dollars ($24,000) in oil payable out of one-eighth of seven-eighths of all oil and gas saved, produced and sold. We agree to accept your check for twelve thousand dollars ($12,000) as soon as the leases in question have been acquired by us, however, holding them in our possession until such time as the balance of twelve thousand dollars ($12,000) has been paid which amount you have agreed to pay us within sixty days from ~~today~~ *on day derrick is being erected* providing we are in a position to deliver said leases to you. . . .

"It is understood in connection with this transaction that we will, at the earliest possible moment, drill a well to the new producing horizon in this area of approximately 4,000 feet, said well to be drilled entirely at our expense. . . . This well is to be drilled at our option either on the 160 Acres we now own or on the 40 Acres of the 240 Acres above referred to, at our option. In any event, it will be an offset location to one of your properties. . . .

"If the above is in accordance with your understanding, kindly sign the copy of this letter and return to me at the

Town House. I am very hopeful and firmly believe that you will have many opportunities to dispose of any part of these holdings at a substantial profit to yourself shortly after drilling operations are commenced.''

This letter was received by defendant, who struck out the word ''today'' and inserted the words which we have italicized, signed the letter thus altered and returned it to plaintiff. A few days later defendant paid plaintiff the sum of $14,000 by delivering to him a cashier's check for $10,000 and returning the uncashed check for $4,000 which plaintiff had given defendant to cover the gambling loss. Thereafter, on March 18, 1938, plaintiff prepared and mailed the following letter which was signed by defendant and returned to plaintiff:

''Referring to letter arrangement of March 14. . . . It is now agreed that you will acquire 200 acres instead of 240 acres, the price for the 200 acres to be $20,000 cash and $20,000 out of oil. Everything else in our letter of March 14th to remain as is, with the exception of the balance of $10,000 due, which amount I agree to pay you out of the first sale made of any of my holdings, and in case there are no sales made, the balance of $10,000 to become due May 14, 1938.''

Although the letter of March 18th purports to change the terms of the original letter of March 14th, it was established by the evidence that it in fact made no change in the number of acres to be acquired by defendant or the cash consideration to be paid. Plaintiff testified that under both agreements the total cash consideration was to be $24,000 and that the reason that the March 18th letter called for the payment of $20,000 cash only was because the additional $4,000 had, in effect, been paid by the return to plaintiff of his uncashed check for that amount. Since both letters provided that defendant was to acquire only 200 acres, there was obviously no change in the amount of acreage involved. In any event, it is of no moment whether the cash price to be paid was $20,000 or $24,000 for by the letter of March 18th, which was signed by defendant after he had paid plaintiff $14,000, defendant admitted that there was an unpaid balance of $10,000. Subsequently defendant delivered to plaintiff four checks, each in the amount of $2,500, thereby again recognizing that the unpaid balance was $10,000.

Having acquired the acreage in question, plaintiff on April 17, 1938, commenced drilling operations on property adjacent to the 200 acres which defendant was to acquire. The well was completed to the new producing horizon, a depth of approximately 3737 feet, but no oil was produced. Since none of defendant's holdings were sold, the $10,000 balance became due on May 14, 1938, at which time defendant was granted additional time to make the payment. The parties met to discuss the matter and at plaintiff's request defendant executed four postdated checks, each in the amount of $2,500, which he delivered to plaintiff in payment of the balance due on the contract. The checks were dated June 1, July 1, August 1 and September 1, all in 1938. The check dated June 1st was paid but the other three were not paid. The present action to recover on the unpaid checks was filed on October 4, 1938. Approximately a month later plaintiff was served with notice that defendant had elected to rescind the contract. A similar notice of rescission had been mailed to plaintiff on August 16, 1938, but it was not received by plaintiff.

Defendant's principal contention is that the evidence is insufficient to sustain the findings and judgment. It is urged that the evidence shows that plaintiff was the agent of defendant, or that the parties were engaged in a joint adventure in the transaction in question. Defendant argues, that the relationship between the parties was confidential, precluding plaintiff from making a secret profit. The evidence discloses that plaintiff acquired the leases on the land in question for less than $100 per acre, which fact was not disclosed to defendant, who made no inquiry concerning the matter. Since under the contract defendant was to pay $120 per acre, plaintiff would, of course, realize a profit from the transaction.

In determining whether a contract is one of sale or one of agency the intention of the parties must be ascertained from the scope and effect of the language employed. (55 Corpus Juris, 43; *Bessing* v. *Prince,* 52 Cal. App. 190 [198 Pac. 422].) It is obvious from an examination of the contract under consideration that it is not a contract of agency but that it is in reality a contract of sale. By its terms plaintiff agreed that if he was successful in acquiring on his own behalf certain oil leases, he would sell or assign to de-

fendant the leases on 200 acres for a fixed price upon stated terms and conditions. Nowhere in the agreement is there any indication that plaintiff was to acquire the property as agent for defendant. ■ It is also evident that the parties were not engaged in a joint enterprise or as partners, for before such relationship can exist it must be shown that there is a community of interest and an agreement to share jointly in the profits and losses resulting from the enterprise. (*United Farmers Association* v. *Sakiota,* 7 Cal. App. (2d) 559 [46 Pac. (2d) 770].) ■ Clearly there was no community of interest, for plaintiff was to have no interest in the 200 acres to be acquired by defendant and conversely, defendant was to have no interest in the other property acquired by plaintiff. There was no agreement to share in the profits and losses. By the express terms of the agreement plaintiff alone was to bear the expense of drilling the well and if it proved to be unproductive, plaintiff alone was to bear the loss. The contract was merely one for the sale of oil leases, involving no fiduciary or confidential relationship which would prohibit plaintiff from making a profit out of the transaction.

■ The trial court properly found that the agreement of the parties was contained in the letters of March 14th and 18th. Where it is the understanding of the parties that an oral agreement is to be reduced to writing, it is essential to the validity of the contract that it be reduced to writing. (*Las Palmas etc. Distillery* v. *Garrett & Co.,* 167 Cal. 397, 400 [139 Pac. 1077].) The court could properly conclude that the parties intended the agreement to be in writing. At the conclusion of their conversation prior to March 14th, defendant said to plaintiff: "O.K., put it in writing and send it to me." It is significant that the letter of March 18th contains the following: "Referring to letter arrangement of March 14th" and "Everything else in our letter of March 14th to remain as is."

■ Defendant also contends that the findings upon which the judgment denying relief on the cross-complaint is based are not supported by the evidence. The record discloses a conflict in the evidence on the subject of the claim of defendant that plaintiff made false and fraudulent representations. There is ample evidence to sustain the findings on this point and also the findings on the claim that there was no consid-

eration. Defendant's argument in this regard is tantamount to a contention that plaintiff's evidence is inherently improbable. We find nothing other than a conflict in the evidence which was resolved by the trial court in favor of the plaintiff. The conclusion reached by the trial court on conflicting evidence may not be disturbed on appeal.

In making its findings the trial court adopted the method of referring to specific paragraphs in the various pleadings and finding them to be either true or untrue. As a result there are several apparent inconsistencies in the findings which, according to the contention of defendant, require the reversal of the judgment. We have carefully examined the findings criticized. It appears that without exception they are concerned with matters not material to the decision. When the findings are read as a whole we find no inconsistencies as to any material issue. The trial court found that the checks upon which this action is based were executed and delivered by defendant to plaintiff and that they were not paid when due; that the checks were given as part of the consideration for the purchase of oil leases on 200 acres of land in accordance with the agreement of the parties; that there was no failure of consideration; and that defendant was not induced to enter into the agreement by any false or fraudulent representations made by plaintiff. Defendant makes no complaint concerning the findings necessary to support the judgment.

Under the terms of the agreement defendant is entitled to have the assignments of the leases on the 200 acres in question delivered to him upon payment of the full purchase price, but the judgment is entirely silent in respect to this condition. The trial court is directed to modify the judgment by providing that as a condition of the payment of the judgment by defendant, plaintiff shall be required to deliver to defendant the assignments in question. As so modified, the judgment is affirmed. Respondent to recover his costs on appeal.

Moore, P. J., and McComb, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 2, 1942.