[Civ. No. 6893.   Third Dist.   Apr. 19, 1943.]

PACIFIC EMPLOYERS INSURANCE COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, MARTIN STOEHSLER et al., Respondents.

W. N. Mullen for Petitioner.

Everett A. Corten, Dan Murphy, Jr., and George C. Faulkner for Respondents.

THOMPSON, J.—By means of certiorari the Pacific Employers Insurance Company seeks to cancel an award of compensation in favor of Harry E. Sowell for injuries received, on the theory that he was not an employee of Walker-Hovey Company, Inc., the petitioner's assured. The determination of this petition depends almost entirely upon the question as to whether there is substantial evidence to support the com-

mission's finding that the workman was an employee of the assured company at the time of the accident.

Walker-Hovey Company, Inc., owned 460 acres of timber land in Modoc County, California. It contracted in writing with Kesterson Lumber Corporation of Klamath Falls, Oregon, to sell a large quantity of lumber at $12 per thousand feet, to be cut and delivered at the rate of 200,000 feet per working day. The contract provided that:

"Either party may terminate further deliveries under the terms of this contract by giving the other party one week's notice in writing."

The petitioner, Pacific Employers Insurance Company was the insurer of the Walker-Hovey Company, which had a large number of workmen employed. In September, 1939, the last mentioned company contracted with Martin Stoehsler to log and cut the timber. The Walker-Hovey Company did not have the necessary equipment with which to carry on the enterprise. Stoehsler told Charles Hovey, who represented the owner of the timber, that he did not have experienced loggers or the required men to do the work. He also told Mr. Hovey that he carried no workman's compensation insurance, and did not then have the money with which to purchase a policy. He testified that the Walker-Hovey Company agreed to carry on its insurance list all men employed by Stoehsler for the month of September, 1939. Mr. Hovey told Stoehsler that William J. Sowell owned some logging equipment and advised him to rent it. It consisted of a log-loading machine, called a jammer, a bulldozer and a "cat." The loading machine was held in a machine shop in Klamath Falls for payment of repairs in a sum amounting to $2,250. It was agreed that Stoehsler would rent the bulldozer and the "cat" for $20 per day, and that Sowell would rent the log loading machine and personally operate it for forty cents per thousand feet of lumber handled. The machinery was moved to the lumber camp. The Walker-Hovey Company then had a number of its employees working in that camp in preparation for the logging enterprise. Richard H. Browne was acting as its representative and manager in that camp. Kenneth Ross, who was the company's local boss of workmen, was engaged in constructing a log dock for several days following September 21st.

Martin Stoehsler did not commence operations under his logging contract until September 18, 1939. After William

Sowell rented his equipment and agreed to work for Stoehsler he communicated with his brother, Harry E. Sowell, the claimant, telling him he could get a job in that lumber camp. Harry and his son Reuben immediately went to the camp, but did not at once go to work. September 21st he was contacted by Walker-Hovey Company's local boss, Kenneth Ross, for whom he worked three days helping to build the dock. The company paid him for that service. Regarding his general employment he said, "I was supposed to have the job loading. Q. Did you know for whom? A. I understood Hovey and Walker. . . . That is what he told me when he called me, Stoehsler was the boss." Following the completion of the dock upon which he worked for three days, he was employed for only two additional days as loader, when he was struck by a log and seriously injured. He said that on September 26th, "A log hit me in the back, knocked me up agin the bunk of the truck. [It struck me] in the back, back of the shoulders, put my chest here up agin the bunk of the truck." As a result of those injuries Harry Sowell was disabled for two and a half years.

A claim for compensation was filed with the Industrial Accident Commission against the Walker-Hovey Company, Martin Stoehsler and the Pacific Employers Insurance Company. After hearing findings were adopted January 29, 1941, relieving from liability the Walker-Hovey Company and Martin Stoehsler on the ground that they were not employers of the workman. An award was however made against William Sowell as the employer of his brother Harry E. Sowell. The Pacific Employers Insurance Company was discharged from liability.

At the first hearing it appeared that the insurance company had paid the sum of $1,145 for expenses incurred by the claimant on account of his injuries sustained in the accident, for the refunding of which sum that company asked for a lien against any award which might be made. This demand for a lien was denied. Because the application for a lien was denied, the Pacific Employers Insurance Company petitioned for a rehearing upon several grounds, including insufficiency of the evidence. William Sowell also asked for a rehearing. Both petitions were granted.

Upon rehearing the commission adopted findings determining that Harry E. Sowell was injured on September 26, 1939,

in the course of his joint employment, by Walker-Hovey Company, Inc., Martin Stoehsler and William Sowell, and each of them; that the Pacific Employers Insurance Company was then the insurance carrier of Walker-Hovey Company, and that the other employers were not insured. It was found that the injuries sustained by the claimant caused temporary total disability entitling him to compensation in the sum of $25 per week, and that the employers were entitled to credit for all sums previously paid on that account. An award of $25 per week was thereupon granted to the claimant from October 4, 1939, "until the termination of disability or the further order of this Commission," against Pacific Employers Insurance Company, Martin Stoehsler and William Sowell, together with $400 attorney's fees. The insurance company's demand for a lien for the refunding of said sum of $1,145 was denied. This petition for a writ of certiorari was then filed in this court.

The petitioner contends that the Pacific Employers Insurance Company was discharged from liability by the commission in its findings which were originally adopted, and that jurisdiction was therefore lost to modify those findings upon rehearing since the insurance company merely asked for a rehearing to grant its petition for a lien to reimburse its payment to the claimant of $1,145, alleged to have been made under a mistake of the law and the facts of this case.

February 14, 1941, the Pacific Employers Insurance Company filed a petition for rehearing based on general grounds, and not for the mere purpose of obtaining a lien. It states in part:

"This petition for rehearing is based on the following grounds, to wit:

"I.   That the evidence does not justify the findings of fact;

"II.   That the findings of fact do not support the award;

"III. That the award is unreasonable;

"IV.   That the commission acted without and in excess of its powers."

On February 20, 1941, William Sowell also filed a separate petition for rehearing on similar grounds.

Both petitions were granted, and a formal rehearing was granted.

The commission is authorized to grant a rehearing and to rescind, alter or amend its original order, decision or award.

(Secs. 5900, 5908, Labor Code; *Great Western Power Co.* v. *Industrial Acc. Com.*, 191 Cal. 724 [218 P. 1009].) In the case last cited it is said:

"The petitioner made a general application for a rehearing, on the grounds already enumerated, and without in any way limiting the issues raised by such request. Under such an application the whole subject matter was reopened for further consideration and determination, and the issues thus raised were as broad as those raised on the original application for compensation. Under subdivision (e) of section 64 of the Workmen's Compensation Act [now section 906 of the Labor Code] the Commission has broad powers in the matter of rehearings. (*Pruitt* v. *Industrial Acc. Com.*, 189 Cal. 459 [209 P. 31].) If it were of the opinion, as it apparently was, that the original award was unjust as first made, it had plenary power to modify it. Section 64 (f) of the act [now section 5908 of the Labor Code] so provides."

We are of the opinion the commission had jurisdiction under the petitions which were filed in this case to grant the rehearing and to alter its former findings by holding the insurance company liable as the insurer of the Walker-Hovey Company.

The important issue to be determined on this petition for certiorari is whether there is substantial evidence to support the last findings of the commission determining that the claimant, Harry E. Sowell, was injured in the course of his employment by Walker-Hovey Company, Inc., Martin Stoehsler and William Sowell, and each of them. Since the last mentioned individuals were not insured at the time of the accident, to hold this petitioner liable it becomes necessary to find there is substantial evidence to support the finding that the relationship of employer and employee existed between the Walker-Hovey Company and the claimant at the time of the accident.

After a careful examination of the record we are persuaded there is adequate evidence to support the last findings of the commission in that regard.

There is evidence that the contract for cutting timber, between the Walker-Hovey Company and Stoehsler, was not executed until September 28, 1939, two days after the accident occurred; that the Walker-Hovey Company kept a crew of its own employees at the camp until after the accident

occurred; that the work to that time, at least, was conducted under the supervision, management and control of its representative Richard H. Browne; that Kenneth Ross was local boss; that the preparation for the logging enterprise was conducted under the supervision and control of the company which retained and exercised the right to direct the work in all essential particulars including the hiring, direction and dismissal of the workmen; that a policy of compensation insurance was not issued to Martin Stoehsler until October 25, 1939, about one month after the accident occurred; that the Walker-Hovey Company agreed to and did carry insurance on all workmen for a period of one month after the work began; that the company paid the wages of the claimant to the time of his accident, and paid the wages of numerous other workmen upon statements rendered by Martin Stoehsler of services performed; that the company's representatives, Browne and Ross, employed the claimant, Harry E. Sowell, to work for a period of several days before the accident occurred on a log dock which it was constructing in that camp; that after the accident occurred Mr. Browne directed a report to be filed in which the claimant was listed as an employee of the company, and that the insurance company paid the claimant on account of his expenses incident to his employment and injuries the sum of $1,145. It is true that the insurance company asserts that money was paid by reason of a mistake as to the facts.

In spite of the fact that Walker-Hovey Company executed, after the accident occurred, a contract with Martin Stoehsler to cut the timber, the record contains evidence to indicate that the lumber company retained and exercised authority to superintend and control the manner in which the work was to be performed and to employ or discharge the men engaged in that enterprise. Mr. Stoehsler testified to that fact. He said Mr. Browne was on the job every day and that he was the manager and the boss and that he had the authority to direct the manner of performance of the work and to hire or fire the workmen. The following evidence supports that statement. Mr. Stoehsler testified in that regard: "Who could tell you to stop? A. Mr. Browne. Q. Could he tell you to stop at any time? A. Yes. . . . He was there a number of times. . . . Practically every day." One day when Stoehsler was leaving the camp to go to Klamath Falls on business, Browne met him and ordered him to "get back up there" on the job. Stoehsler promptly returned, admitting

that he was required to obey the orders of Mr. Browne. He said in that regard: "Q. In other words you obeyed his orders? A. Yes, he was the manager there."

On another occasion when a wreck occurred, Browne ordered Stoehsler to clear the wreck, and he did so without protest.

The evidence also shows that Mr. Browne assumed the authority to employ, direct and discharge the workmen. On one occasion Browne criticised the fact that Stoehsler's men were cutting the logs too close to the ground so as to retain deteriorated or rotted butts. Browne discharged four men for doing so, without consulting Stoehsler, who, when asked if he approved of those dismissals, replied, "I didn't have no say of it." At another time when Stoehsler secured some men to work in the felling of trees, Mr. Browne refused to let them go to work. Stoehsler testified regarding that incident, Browne "did not even let them come up" to go to work. Again when a timekeeper by the name of Stuart W. Patty was employed for Stoehsler's job, he was instructed by Browne regarding the manner of performing his work and the form and contents of reports he was required to make. Stoehsler did not pretend to direct or instruct him. Mr. Patty testified in that regard:

"I talked it over with Mr. Browne. Q. Then the only one that told you about this . . . was Mr. Browne. . . . A. I believe I followed his instructions. Q. Did you ask Mr. Stoehsler about it before at any time? A. No, sir. I did it on my own. Q. Just as Mr. Browne told you? A. Yes, sir."

The record discloses many other incidents of a similar nature, which, in our judgment, sufficiently support the findings and judgment of the commission, holding that the relationship of employer and employee existed between the Walker-Hovey Company and Harry Sowell at the time of his accident.

The commission held that the Walker-Hovey Company, Stoehsler and William Sowell were joint employers of the claimant, Harry Sowell. Where the facts support the finding of a joint hiring of a workman by two or more employers, each employer becomes liable for compensation incurred as a result of injuries sustained by the workman in the course of his employment. (*New York Indemnity Co.* v. *Industrial Acc. Com.*, 126 Cal.App. 37 [14 P.2d 160]; *Standard Acc. Ins.*

*Co.* v. *Industrial Acc. Com.,* 123 Cal.App. 443 [11 P.2d 401]; *Ragos* v. *Industrial Acc. Com.,* 83 Cal.App. 313 [256 P. 487].)

In the present proceeding we are of the opinion the evidence sustains the finding that the claimant, Harry Sowell, was an employee of the Walker-Hovey Company at the time of his accident, in spite of the fact that the timber contract between the lumber company and Stoehsler was actually executed a few days later. ■ When a contract is indefinite or uncertain in its terms, oral evidence may be received of the facts and circumstances surrounding the performance of the work to determine whether the injured workman is an employee of an independent contractor only, or whether he is subject to the control and is an employee of the other contracting party. (*Carlson* v. *Industrial Acc. Com.,* 213 Cal. 287 [2 P.2d 151]; *S. A. Gerrard Co.* v. *Industrial Acc. Com.,* 17 Cal.2d 411 [110 P.2d 377].)

In the present proceeding the contract which was signed two days after the accident occurred, provides that:

"Logging shall be carried on . . . in accordance with the company's instructions."

Assuming that the contract had been agreed upon previous to its actual execution, we are of the opinion it contained sufficient uncertainty to justify the admission of oral evidence of facts and circumstances for the purpose of determining whether the claimant was employed by an independent contractor or by the Walker-Hovey Company.

For the foregoing reasons the award is affirmed.

Peek, J., and Adams, P. J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied June 17, 1943.