[Civ. No. 7115. Third Dist. Jan. 23, 1945.]

M. J. FREEDMAN, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, JOHN ROSS et al., Respondents.

Arthur R. Friedman for Petitioner.

Everett A. Corten and Dan Murphy, Jr., for Respondents.

ADAMS, P. J.—In this proceeding the Industrial Accident Commission made a finding that "John Ross, applicant, while employed as a grape picker, on September 22, 1943, near Modesto, California, by M. J. Freedman and Ed Hasson, then and there engaged in a joint enterprise to their mutual advantage and profit, to wit: the harvesting of grapes on the ranch of and owned by defendant M. J. Freedman; sustained injury occurring in the course of and arising out of his employment . . . ," and held that Hasson and Freedman were jointly and severally liable for an award in favor of John Ross. Freedman has sought a review by this court contending that the commission erred in finding that he and Hasson were engaged in a joint enterprise. He also contends that the evidence before the commission shows that Ross was not an employee of petitioner but was an employee of Hasson, acting as an independent contractor, and that petitioner is not liable for the award made to Ross.

As we construe the findings of the commission, the award is based upon the proposition that Hasson and Freedman were engaged in a joint enterprise, and that the liability of both Hasson and Freedman flows from this fact. Our first inquiry is, then, whether the testimony before the commission is sufficient to support a finding that Hasson and Freedman were engaged in such an enterprise or adventure.

In 30 American Jurisprudence 681, section 7, the relation of joint adventurers is said to be created where two or more persons combine their money, property or time in the conduct of some particular line of trade, or for some particular business deal, agreeing to share jointly, or in proportion to the capital contributed, in the profits and losses, assuming that the circumstances do not establish a technical partnership. Also (p. 682, § 11) that a joint proprietary interest and a

right of mutual control over the subject matter of the enterprise or over the property engaged therein is essential to a joint adventure.

In *Beck* v. *Cagle,* 46 Cal.App.2d 152, 161 [115 P.2d 613], the court held that to constitute a joint enterprise the parties must have a community of interest in the purposes of the undertaking and equal authority or right to direct the movements and conduct of each other in connection therewith; they must share in the losses, if any, and there must be a close and even fiduciary relationship between them. In *Stoddard* v. *Goldenberg,* 48 Cal.App.2d 319, 324 [119 P.2d 800], it was said that an indispensable feature of a joint venture is an agreement by the parties to it to share jointly in the profits and losses. (Also see *Enos* v. *Picacho Gold Min. Co.,* 56 Cal. App.2d 765, 771 [133 P.2d 664].) In *Quinn* v. *Recreation Park Association,* 3 Cal.2d 725, 728 [46 P.2d 144], the court said that in order to establish the existence of a joint adventure there must be proof of a community interest, and a sharing of profits. (Citing 14 Cal.Jur. 761; *Dempsey-Kearns Theatrical etc. Enterprises* v. *Pantages,* 91 Cal.App. 677 [267 P. 550].) In *United Farmers Association* v. *Sakiota,* 7 Cal. App.2d 559, 560 [46 P.2d 770], it is stated that the relationship of joint adventurers is similar to that of partners in that an essential element is that the parties share in the profits and losses. In *Spier* v. *Lang,* 4 Cal.2d 711, 715 [53 P.2d 138], it is said that joint participation in the control and management of a business is one of the indicia of a joint adventure; that the usual test of a partnership between the parties to a joint adventure is their intent to become partners. The relation of joint adventurers is controlled largely by the principles or rules applicable to partnerships, though joint adventures are usually confined to a single transaction.

Also see 48 American Law Reports 1055, as to what amounts to a joint adventure.

The evidence in the proceeding, which is contained in the return filed by respondents, shows that Freedman was operating a vineyard, and, desiring to harvest the grapes growing upon a 30-acre portion of same, approached Hasson and asked him if he could secure a gang of pickers. Hasson replied that he could and asked what Freedman would pay. The latter agreed to pay 13 cents per box for the grapes picked, and to pay $1.00 per ton to Hasson for his trouble in hiring the

gang. Hasson hired the pickers including Ross. The latter had been working but three hours when he was struck in the eye by a vine, thus sustaining the injury for which award was made. Ross testified that at the time of the injury he called Hasson; that Freedman was on the premises and that Hasson told Freedman to take him (Ross) to a doctor and that Freedman took him to a doctor at Turlock and paid the bill; that Hasson had hired him, and told him he would get 13 cents per box, and that Hasson paid him $5.25 for the three hours' work he had done. When asked if Freedman came around to see how he picked—whether he picked too many leaves— he stated that he saw him there one time, but that Freedman did not say anything to him. He also testified that Hasson had taken him out to Freedman's place and had shown him the row to pick on; that at the time he started to work he did not see Freedman.

Hasson testified that Freedman asked him to get a gang of men to pick grapes, and said he would pay 13 cents per box, and pay him $1.00 per ton for his trouble to hire the gang; that he hired men, Ross among them, and told them they were to work for Freedman; that when he arrived at the vineyard with the men Freedman showed him what to do, showed him the boxes; that when he brought Ross out he did not take him to Freedman; that Freedman told him to check the boxes and "look at the men to clean the grapes as a foreman, to look after the job"; that Freedman gave him the money for the total number of boxes picked each week; that after getting tab from the winery Freedman gave him a check for his $1.00 per ton, and that he averaged $12 or $14 or $15 per day on the $1.00 per ton; that the men struck and wanted to quit and Freedman told him to give them more money; that the men went to Freedman who agreed to pay 14 cents; that when Ross got hurt and came to him, he called Freedman and asked what he should do, and that Freedman took Ross to a doctor. When asked if he took out insurance he replied that he was not a contractor, but a foreman. He testified, however, that at the same time he had a gang on another ranch; that he then put another man in his place as foreman at Freedman's, and paid such man himself, after collecting from Freedman; that he continued to go up to Freedman's two or three hours a week, and on Saturdays got the book from the man he had put in his place, and turned the book in to Freedman.

Freedman testified that when he was looking for a grape crew Hasson was pointed out to him as a man who had one; that he talked to Hasson; that Hasson wanted 13 cents per box plus $1.00 a ton for himself, and he agreed to that; that Hasson brought the crew to the ranch; that he did not talk to the crew, as he had told Hasson he (Hasson) was to run them and that when he (Freedman) had any complaints he would tell Hasson; that he walked through the field occasionally to find how the boxes were being filled and whether all grapes were being picked off the vines; that when Ross was hurt Hasson called him and asked if he would take Ross to a doctor; that all moneys were paid to Hasson for picking the grapes; that he never paid him more than 13 cents a box plus the $1.00 per ton, and that none of Hasson's employees came to him to ask for money while they were working for him; that when his job was finished his brother wanted the crew, but when they went to the brother's place and found a crew across the road were getting more they went on strike, and he telephoned his brother who authorized the payment of an extra cent per box; but that was not while they were working for Freedman himself; that after Hasson left he still continued to get the checks every week.

It seems obvious from the foregoing that Hasson and Freedman were not engaged in a joint adventure within the import of the above cited decisions as to what constitutes such a relationship; no community of interest in the object of the undertaking, no equality of right to govern the conduct of each other with respect thereto, and no agreement to share profits or losses appear, and there is no evidence of an intention on the part of either that they were to become partners. It therefore follows that there is no basis for a finding of joint liability for the injury incurred by Ross; and that if both are individually liable, such liability must be premised upon the ground that Ross was either an employee of both Hasson and Freedman as individual employers, or an employee of one or the other.

Respondents in their answer in effect admit that this is so, but they say that there is sufficient evidence to show that Freedman was individually liable as the employer of Ross, and that "if there was any error in the Commission's award, it was in holding the other defendant (Hasson) jointly and severally liable with him." They then argue that since Hasson

has not .contested this feature of the award it should be affirmed as against Freedman. But this argument defeats itself, for the commission has not found that Ross was the employee of Freedman, but that he was an employee of the partnership, or joint adventureship if it may be so called. Presumably, it found them severally as well as jointly liable because of its conclusion that they were engaged in a joint adventure, and that such joint and several liability flowed from that relationship; and this court cannot say that had the commission not found that there was a joint adventure it would have found that Freedman rather than Hasson was the employer. There is evidence in the record from which the commission might have found that Hasson was an independent contractor, and· that, as such, he and not Freedman was the employer of Ross. (See *Winther* v. *Industrial Acc. Com.*, 16 Cal.App.2d 131 [60 P.2d 342]; *State Compensation Insurance Fund* v. *Industrial .Acc. Com.*, 46 Cal.App.2d 526 [116 P.2d 173].) At any event, whichever was the employer is a question of fact peculiarly within the province of the commission, and it is not one for this court to determine from the evidence adduced.

The finding upon which the award was based, to wit, the liability of a partnership in the nature of a joint adventure, being without support, the award falls with it. The award is therefore annulled and the cause is sent back to the commission with instructions to find from the evidence already presented and such further evidence, if any, as may be presented to it, who was the actual employer of Ross.

Peek, J., concurred.

THOMPSON, J.—I dissent. The majority opinion appears to me to be contrary to law. It fails to apply the uniform rule that a separate and several liability exists against each employer regardless of whether he is a coemployer or a member of a joint enterprise. The liability of joint adventurers is the same as that of partners. The finding that Freedman and Hasson were engaged in a joint enterprise is therefore immaterial and may be disregarded as surplusage. Even though the evidence may not support the finding of a joint adventure, it seems to me to be neither necessary nor proper to reverse the award.

The commission found that M. J. Freedman and Ed Hasson employed the workman, John Ross. It also rendered a several award against both employers. There is ample evidence to support that finding against Freedman. The findings and the Workmen's Compensation Act should be liberally construed for the benefit of an injured workman. (Lab. Code, § 3202; 24 Cal.Jur. 1007, §§ 229 and 230.) The finding that Freedman and Hasson employed Ross refutes the theory that Hasson was an independent contractor. He testified that he was not "the boss," but that he was merely acting as "foreman." That is in accordance with the record as a whole which indicates that Hasson secured the workmen and acted as foreman as the *agent* of Freedman, and not otherwise. Hasson had no authority to fire the workmen, nor to fix their wages, nor to direct and control the enterprise of picking the crop of grapes. When the workmen asked for an increase of wages Hasson sent them to Freedman saying he was not the boss and that he had no authority to raise their pay. When Ross was injured Hasson told Freedman, "It [the responsibility] is up to you if you want to take him to a doctor." Freedman assumed that liability by taking the injured man to a physician for treatment. The burden was on the petitioner, Freedman, to prove that Hasson was an independent contractor. He failed to do so. When the evidence adduced, together with the reasonable inferences to be drawn therefrom, indicate that the owner of a business has the right to discharge workmen, fix their wages and control and manage their operations, he may be deemed to be the employer regardless of the manner in which they are paid or the method of their selection. (*Riskin* v. *Industrial Acc. Com.*, 23 Cal. 2d 248 [144 P.2d 16].) Where there is a substantial conflict of evidence regarding the relationship of employer and employee, the findings of the commission may not be disturbed. (*S. A. Gerrard Co.* v. *Industrial Acc. Com.*, 17 Cal.2d 411 [110 P.2d 377].)

Since Freedman was found by the commission to be an employer of Ross, and a separate award was rendered against him, it is immaterial whether Freedman was the sole employer or merely a coemployer of the workman. In either event he would be liable for the full amount of the award. (*Pacific Employers Ins. Co.* v. *Industrial Acc. Com.*, 58 Cal.App.2d 262, 269 [136 P.2d 633]; *Standard Accident Ins. Co.* v. *In-*

*dustrial Acc. Com.*, 123 Cal.App. 443 [11 P.2d 401].) Even though a joint enterprise was contemplated by the employers, and it failed for some reason, each member may nevertheless became severally liable for the full amount of the award. (1 Campbell on Workmen's Compensation, p. 406, § 452; *New York Indemnity Co.* v. *Industrial Acc. Com.*, 126 Cal. App. 37, 41 [14 P.2d 160].) A joint and several award against coemployers, whether they are members of a joint enterprise or not may be binding on one employer, even though it is void as to the other party. (*Standard Accident Ins. Co.* v. *Industrial Acc. Com., supra.*) In the case last cited it was held, on certiorari, that the petitioner was liable for the full amount of the award, notwithstanding the fact that the judgment against the other coemployer, the William Powell Company, may have been void because the commission lacked jurisdiction of the last named company for defect of substituted service of process.

It follows that since the commission found that both Freedman and Hasson were employers of Ross, and rendered a joint and several award against them, Freedman would be liable for the full amount of the award, even though the award may be void as to Hasson. Hasson is not a petitioner in this proceeding. He failed to appeal.

For the foregoing reasons I am convinced the award against M. J. Freedman should be affirmed.

Respondents' petition for a hearing by the Supreme Court was denied March 22, 1945.