[Civ. No. 14788. First Dist., Div. Two. Aug. 30, 1951.]

BETHLEHEM PACIFIC COAST STEEL CORP. (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

Lillick, Geary, Olson, Adams & Charles, Harold S. Dobbs and John F. Porter for Petitioner.

Edmund J. Thomas, Jr., T. Groezinger and Alvin L. Dove for Respondents.

GOODELL, J.—Respondent Chipman was injured while employed by petitioner as a structural iron worker at Stockton. He was then 25. In proceedings several years later he was given an award based on a rating of 10¼ per cent permanent disability. He was dissatisfied therewith and asked for and obtained a rehearing. The second hearing was before a different referee and the rating was made by a different rating specialist. The second award was based on a rating of 27 per cent permanent disability. The employer, a self-insurer, then asked for a rehearing, which was denied, and the present proceeding followed.

Chipman was injured while he and a fellow employee were unloading from a gondola car steel girders and trusses, and some miscellaneous iron. A girder, weighing about 1,875 pounds, which was being handled by a crane, caught on the edge of the car. Chipman testified that he "had reached out to free the girder. As a result I didn't quite make it and as the girder came down it hit the side of the car and pinned me between the girder and the vertical trusses." The truss struck him diagonally across the chest and the girder struck him "at the lower part of the shoulder blades horizontally right across the back." His chest, upper back, and left shoulder were injured and five ribs on his right side and four on his left side were fractured. His right lung was punctured. He returned to work about July 20, 1945, but could do only light work and not such as he had done theretofore.

Chipman testified with respect to the consequences of his injuries and how they had affected him and his ability to work. He testified that he could no longer continue as a structural iron worker, which requires hand-over-hand climbing which he could no longer do, but had had to confine his activities to reinforced iron work which pays 25 cents an hour less, and wherein there is very little climbing; "very little overhead work at all" and which is mostly ground .work, or on staging or scaffolding. He testified, also, that after his injury he had to quit two different jobs because, physically, he could not handle them.

In connection with the first hearing a doctor who was agreed

upon by both Bethlehem and Chipman examined the applicant and turned in a detailed report of his findings. Chipman was also examined by a doctor appointed by the commission, who filed a report. At the second hearing Chipman again testified, and the reports of both doctors theretofore rendered went into the record. No other medical reports are in the case. Each of the two rating reports enumerate the physical and medical factors on which they are based.

The burden of petitioner's attack herein is that because (a) the findings in both hearings were based on the same medical reports, and (b) there was nothing developed at the second hearing which had not been brought out at the first, and (c) the factors shown in both rating reports are essentially the same, there is no evidence to sustain a rating of 27 per cent as against the earlier one of 10¼ per cent. More than that, petitioner points out that the second rating report contains a factor (respecting Chipman's gripping or grasping power) which was not contained in the first rating report, and which indicates that even the 10¼ per cent rating was too high.

On receiving a copy of the second report of permanent disability rating, which was made by Edw. T. Dougherty, fixing it at 27 per cent, or the equivalent of 108 weeks of disability, petitioner's counsel wrote the commission stating that they desired to exercise the right to cross-examine the rating bureau regarding the report, and requesting that a hearing be scheduled. The commission fixed the time and place for the hearing "to cross examine E. T. Dougherty" and notices were sent to all concerned. Petitioner failed to subpoena Mr. Dougherty as the rules require and at the time and place set for his cross-examination no witness was present.

The net result is that petitioner is now in the position of urging on this court that there is no evidence to sustain the 27 per cent rating without having cross-examined the expert who made it. Such examination might have convinced counsel that the rating was not improper. If it did not do so, it at least would have supplied the petitioner with a record which could have been brought here and which might have formed some kind of a basis for the attack now made.

Section 4660, Labor Code, provides: "In determining the percentages of permanent disability, account shall be taken of the nature of the physical injury or disfigurement, the occupation of the injured employee, and his age at the time of such injury, consideration being given to the diminished

ability of such injured employee to compete in an open labor market.

"The commission may prepare, adopt, and from time to time amend, a schedule for the determination of the percentages of permanent disabilities in accordance with this section. Such schedule shall be available for public inspection, and without formal introduction in evidence shall be prima facie evidence of the percentage of permanent disability to be attributed to each injury covered by the schedule."

There is not even before this court a copy of the schedule provided for in section 4660, which might or might not have thrown some light on the case.

All that the petitioner has done is to draw a comparison between the two rating reports, factor by factor, and to suggest its own idea of what percentage certain factors should properly rate. Counsel then concludes that, at the very outside, the percentage of permanent disability should not be higher than 17.

Petitioner concedes "that the determination of the percentage of an employee's disability is left *in large measure* to the discretion of the . . . Commission." (Italics added.) The authorities go much further than that.

In *Frankfort General Ins. Co.* v. *Pillsbury,* 173 Cal. 56, 59 [159 P. 150] the court said: "The extent of disability occasioned by an injury is not capable of exact measurement. The percentage of such disability is a matter to be determined by the commission in the exercise of its sound discretion, based upon a fair view of all of the circumstances. *Its conclusion on this matter is the determination of a question of fact, and is not subject to review by the courts unless palpably contrary to the undisputed evidence.*" (Italics added.) And in *Ford Motor Co.* v. *Industrial Acc. Com.,* 202 Cal. 459, 464 [261 P. 466]: "This was a matter within the exclusive jurisdiction of the Commission, and this court has no power to disturb such action provided there was any evidence before the Commission to justify such a finding."

In *Hines* v. *Industrial Acc. Com.,* 215 Cal. 177, 188 [8 P.2d 1021], the court said: "The determination of the percentage of this disability is, of course, left to the sound discretion of the Commission to be exercised in view of all the circumstances. (Citations.)"

In *Tanenbaum* v. *Industrial Acc. Com.,* 4 Cal.2d 615, 618 [52 P.2d 215], it is said: ". . . it is settled that the determina-

tion of the percentage of disability is a matter left to the sound discretion of the commission." (Citations.)

In *County of Los Angeles* v. *Industrial Acc. Com.*, 14 Cal. App.2d 134, 138 [57 P.2d 1341], this was said: "The officials of the Commission with their great experience in handling matters involving injuries to workmen are of necessity better qualified than the average layman to pass upon such questions."

For all that appears in this record the rating bureau might have found that the 10¼ per cent had been erroneously arrived at or that it "was unjust as first made" (*Great Western Power Co.* v. *Industrial Acc. Com.*, 191 Cal. 724, 729 [218 P. 1009] ; *Pacific Employers Ins. Co.* v. *Industrial Acc. Com.*, 58 Cal.App.2d 262, 267 [136 P.2d 633]).

From the brief statement of facts appearing earlier it is perfectly clear that Chipman's injuries were very serious; that after his accident his ability to labor as a structural iron worker ended, and that this "diminished ability" (§ 4660) reduced his daily earnings by about $2.00 (25 cents an hour).

We are satisfied that there is sufficient evidence to sustain the 27 per cent rating, the findings and the award. At the very least we are unable to say on this record that the commission's conclusion is "palpably contrary to the undisputed evidence" (*Frankfort General Ins. Co.* v. *Pillsbury*, 173 Cal. 56, 59 [159 P. 150]).

In its closing brief "petitioner contends that it was an abuse of discretion for the referee to refuse petitioner's offer to request that the specialist, who was then available, take the stand, and to further refuse to grant a continuance so that a subpoena might be procured." If this is intended as presenting a separate point in this proceeding, the answer is that that particular point cannot now be raised, since it was not raised before the commission on petitioner's application for a rehearing (Lab. Code, §§ 5900, 5902, 5904; *Alford* v. *Industrial Acc. Com.*, 28 Cal.2d 198, 206 [169 P.2d 641], and *Pullman Co.* v. *Industrial Acc. Com.*, 28 Cal.2d 379, 386 [170 P.2d 10], and their citations).

The award is affirmed.

Nourse, P. J., concurred.