UNITED STATES of America,
Appellant,

v.

The **UNITED STATES NATIONAL BANK OF PORTLAND (OREGON)**, Executor of the Estate of Sam J. Wilson, Deceased, and Jessie Wilson, Appellees.

**No. 15120.**

United States Court of Appeals
Ninth Circuit.

Dec. 28, 1956.

———◆———

Charles K. Rice, Asst. Atty. Gen., John N. Stull, Robert N. Anderson, Harry Baum, David O. Walter, Attys., Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Edward J. Georgeff, Asst. U. S. Atty., Portland, Or., for appellant.

C. E. Wheelock, Carl E. Davidson, Charles P. Duffy, Portland, Or., for appellees.

Before HEALY, POPE, and LEMMON, Circuit Judges.

LEMMON, Circuit Judge.

Taxpayers, the Executor of the Estate of Sam J. Wilson, deceased, and his widow, presented a claim for refund of income taxes paid. The claim being rejected, timely suit was filed by them in the District Court to recover the taxes paid. From a judgment in their favor, this appeal was taken by the United States.

In 1943 an oral agreement was entered into between Wilson and one Samuel A. Agnew, under which Wilson was to procure various timberlands which could be resold for profit. Pursuant thereto Wilson arranged for the purchase of various properties with money supplied by Agnew. Title to such lands was taken in Agnew's name. In 1946 difficulties arose between the two men which resulted in three suits begun in the Su-

perior Court of Del Norte County, California, in one of which Wilson was plaintiff. The amended complaint therein alleged that:

The agreement between the parties was a joint venture under the terms of which the timberlands purchased were to be resold and the profits from land purchased at tax sales were to be divided 50% to Wilson and Wilson was to receive 20% of the profits derived from sales of lands acquired from private owners.

Agnew had breached the agreement by failing to sell the properties.

That suit was compromised. Under the terms of the settlement, Agnew conveyed to Wilson a tract of timber and Wilson retained $25,000 previously advanced to him by Agnew. In the joint income tax return for the year 1949, Wilson's widow reported the $25,000 as income for that year, but treated the receipt of the land as a nontaxable dissolution of a joint venture. In 1954, the Commissioner notified taxpayers of a deficiency for 1949 in the amount of $361,852.26, and an overassessment for 1950 of $16,789.84. The basis for the asserted deficiency was the statement that 70% of the fair market value of the tract conveyed to Wilson by Agnew (the other 30% being received by attorneys for Wilson) constituted the receipt by Wilson of compensation for services rendered by Wilson rather than property received by him upon the dissolution of a joint venture. The net amount assessed, plus interest, was paid by the taxpayers.

If the real property received by Wilson in this settlement constituted compensation for services performed by Wilson, or if it represented damages or loss of anticipated profits of a joint venture,

the amount received was income taxable to Wilson under the provisions of Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a). If, however, there resulted only a division in kind of property owned by the parties as joint venturers no taxable gain was realized under Section 29.112(a) (13)–2 of Treasury Regulations.

The court below found that the agreement between Agnew and Wilson was one of joint venture, that the agreement of settlement was a dissolution of the joint venture, and that the division in kind was of the assets of the joint venture. It was contended below, as here, that the timberlands constituted compensation to Wilson for services.

The court found that Wilson had performed his part of the agreement and that the settlement agreement effected a dissolution of the joint venture, that the conveyance of the timberlands by Agnew to Wilson did not constitute a distribution of profits or anticipated profits. Appellant asserts that the court erred in so finding because, as asserted, there is no evidentiary support for the finding that there existed a joint venture and that the settlement was a claim for profits only, based upon the theory that the conveyance was for compensation for personal services.

Considerable space in the briefs and much of the argument was devoted to the question as to whether the oral understanding and surrounding circumstances permitted the finding that the agreement constituted a joint venture.

 The trial court held that the agreement between Wilson and Agnew effected a joint venture.[1] We conclude that this need not be resolved by us

---

[1] It is contended that it is essential to a joint venture that there be a sharing of losses as well as profits and a joint right of control. Gottlieb Brothers v. Culbertson's, 152 Wash. 205, 209, 277 P. 447; Beckwith v. Talbot, 2 Colo. 639, 645; Burton-Sutton Oil Co. v. Commissioner, 5 Cir., 150 F.2d 621, 622, 160

A.L.R. 961, reversed 328 U.S. 25, 66 S. Ct. 861, 90 L.Ed. 1062; Place v. Commissioner, 17 T.C. 199, 206, affirmed 6 Cir., 199 F.2d 373, certiorari denied 344 U.S. 927, 73 S.Ct. 496, 97 L.Ed. 714; Rupple v. Kuhl, 7 Cir., 177 F.2d 823, 825–826; Aiken Mills v. United States, 4 Cir., 144 F.2d 23, 24, 25; Howard

since we are satisfied that the compromise resulting from the state actions by which Wilson received the real property with which we are concerned constituted a division of property of a joint venture. The taxable character of that property is to be determined by the allegations in the pleadings of the person receiving it.[2] Property thus acquired has the same status that it would have if the property had been acquired through a judgment in favor of the plaintiff in the action.[3] The nature of the controversy settled is controlling.

v. Società Di Unione, etc., Italiana, 62 Cal.App.2d 842, 847–848, 145 P.2d 694; Freedman v. Industrial Accident Commission, 67 Cal.App.2d 629, 154 P.2d 922, and Dempsey-Kearns Theatrical & Motion Picture Enterprises v. Pantages, 91 Cal.App. 677, 682, 267 P. 550; Gong v. Toy, 85 Or. 209, 166 P. 50; First Nat. Bank of Eugene v. Williams, 142 Or. 648, 20 P.2d 222; H. H. Worden Co. v. Beals, 120 Or. 66, 73–74, 250 P. 375.

2. Lyeth v. Hoey, 305 U.S. 188, 196–197, 59 S.Ct. 155, 83 L.Ed. 119; Helvering v. Safe Deposit & Trust Co. of Baltimore, 316 U.S. 56, 64–67, 62 S.Ct. 925, 86 L. Ed. 1266; Farmers' & Merchants' Bank of Catlettsburg, Ky. v. Commissioner, 6 Cir., 59 F.2d 912, 913–914.

3. "Amended Complaint

* * * * *

I.

"That for a great many years prior to the date of an agreement hereinafter alleged, plaintiff has from time to time followed the occupation of cruising of timber for the purpose of ascertaining the quantity and quality of merchantable and useable lumber therein; that during said period of time he was and is familiar with fir and other varieties of timber; that from his work, experience and knowledge he was able to ascertain the quality and quantity of growing timber, its accessibility for logging for the manufacture thereof into timber products, and was generally familiar with the business of buying and selling timber and timberlands, determining the quantity of timber upon lands and its possibility for profitable use in the manufacture of its products.

II.

"That for a number of years prior to the time hereinafter alleged, the defendant, Samuel A. Agnew, operated mills for the manufacture of lumber, dealt in timberlands, and at the time of the agreement hereinafter alleged, and for a considerable period of time prior thereto, wanted to acquire interest in timberlands in the States of California and Oregon for the resale thereof at a profit.

III.

"That on or about the 15th day of May, 1943, the plaintiff, Samuel J. Wilson, and the defendant, Samuel A. Agnew, made and entered into an oral agreement of joint adventure by the terms of which said plaintiff and defendant mutually agreed that plaintiff would search for and examine various timberlands, locate the same, determine their suitability for purchase for logging for the manufacture of lumber or resale at a profit, and would ascertain from public records, particularly in the County of Curry, Oregon, and the Counties of Del Norte, Trinity, and Humboldt, California, descriptions of lands that might be purchased by plaintiff and defendant from the States of Oregon and California, or counties or other political subdivisions thereof, secure the offering of such lands by such governmental agencies holding title thereto, bring about the sale of said lands by such states, counties, or political subdivisions thereof according to the governing law pertaining thereto and bid for such timberlands at such sales for the joint use and benefit of plaintiff and defendant. It was mutually agreed that plaintiff was to purchase, if the price thereof did not exceed Five Dollars ($5.00) per acre, for the joint use and benefit of plaintiff and defendant such timberlands in the State of California and Oregon, some of which lands had theretofore been acquired by the aforesaid states, counties or political subdivisions thereof by reason of taxes having been unpaid and delinquent thereon, or would acquire timber and timberlands at tax sales, and that the plaintiff and defendant would negotiate for, attempt to acquire and acquire timberlands in the States of California and Oregon, which lands were designated as privately owned lands, from the owners thereof. Plaintiff was to approach the owners of such privately owned land for the purpose of ascertaining if said lands were for sale at a price that would permit plaintiff and defendant to purchase them and resell them within a reasonable time at a profit and, if so, to acquire such privately owned timberlands. It was understood and agreed between plaintiff and defendant that any and all said lands so purchased by the plaintiff and defendant was to be sold within a reasonable time for profit; it was agreed between plaintiff and defendant that the defend-

We have no hesitancy in concluding that in the Del Norte County litiga-

ant, from his own funds, was to advance the purchase price of all such lands purchased pursuant to the terms of such oral agreement, and to thereafter pay taxes accruing or accumulating on said lands during the period of time such timberlands were so held, and that upon the sale of said timber and timberlands pursuant to such agreement and at a profit, there was first to be deducted from the sale price thereof any sums advanced by defendant for the purchase of said lands or in the payment of taxes, together with interest thereon, at the rate of five per cent (5%) per annum. That such profits so accruing from said sales of any timberlands acquired by plaintiff and defendant under such joint adventure agreement that had been acquired from any state, county or political subdivision of any state at tax sale or which was purchased from any state, county or political subdivision of any state which had acquired such timberlands from delinquent taxes were to be divided equally between the plaintiff and defendant, and that all profits derived from the purchase and sale of timberlands by plaintiff and defendant from private owners were to be divided on the basis of eighty per cent (80%) thereof to the defendant, Samuel A. Agnew, and twenty per cent (20%) of such profit to plaintiff. It was agreed that plaintiff would look for purchasers and negotiate for the sale of such timberlands so acquired, and that plaintiff would do and perform any and all other necessary work and labor required of him in connection with the purchasing and disposing of said timberlands.

IV.

"That after the making of the above described oral agreement of joint adventure between plaintiff and defendant, and in pursuance and performance of such agreement, plaintiff, at his own cost and expense, maintained an office, employed secretarial help, maintained a telephone, conducted correspondence, cruised, and caused to be cruised, timberlands, caused such timberlands to be surveyed, searched public records to determine what timberlands might be purchased from states, counties or political subdivisions thereof, and what timberlands might be sold by such governmental agencies on account of unpaid delinquent taxes, went upon and examined numbers of tracts of timberlands, assembled small, variously owned tracts of timber into blocks of timber so that the same might be suitable for logging operations or resale, secured rights

tion Wilson sought a decree adjudging the existence of the joint venture, es-

of way, travelled to various places to interview the owners of privately owned timberlands, and since on or about May 15, 1943, has devoted practically all of his time to the performance of carrying out the purposes and objects of such agreement, and continued to perform many other and numerous items and details necessary and required in the negotiating and consummating the acquisition of the timberlands hereinafter described. For the purpose of carrying out and putting into effect such joint adventure agreement, plaintiff has expended a large amount of time, effort and money.

V.

"That in pursuance and in the performance of said agreement, and with the moneys advanced by defendant, and as the result of the performance of the terms of the above agreement, the plaintiff and defendant have acquired and now hold, subject to the terms of their joint adventure agreement as hereinbefore alleged, timber, timberlands and premises located in the Counties of Del Norte, Trinity, and Humboldt, California, and in Curry County, Oregon; said timber and timberlands are more particularly described in 'Exhibit A' attached hereto and made a part hereof, in which tax title land and land acquired from private owners are particularly designated. All of such timber and timberlands are held subject to the terms of their joint adventure. Title to all of said lands was taken in the name of the defendant, who holds the title thereto, for the use and benefit of the joint adventure in accordance with the terms thereof, and as a trustee for plaintiff to the extent of plaintiff's interest therein. In each instance in which any timberlands were purchased, plaintiff handled the entire transaction together with all of its details, and directed that the title be taken in the name of the defendant for the purposes of such joint adventure and at all times until the breach of said agreement by defendant, as hereinafter alleged, defendant acknowledged and recognized that he held the title to such timberlands for the use and benefit of plaintiff and defendant, and as a trustee for plaintiff. That there are located and growing upon said timberlands approximately one billon, two hundred million feet of standing merchantable timber. That all of such timber purchased from states, counties or political subdivisions thereof, or by reason of tax sales, was purchased at less than Five Dollars ($5.00) per acre. That the cost of such

tablishing Wilson's interest in the property belonging thereto, and partitioning such property.[4]

The trial court was correct in concluding that the real property received by Wilson in settlement of the litigation

timber and timberlands, together with the taxes accruing thereon, and paid by defendant, does not exceed the sum of $400,000. Such timber and timberlands herein described and referred to and purchased in accordance with the agreement of the parties herein described now have a fair market value of approximately $6,000,000.

### VI.

"That on or about July 2, 1946, defendant denied the existence of any joint adventure agreement with plaintiff, refused to recognize any such agreement, denied plaintiff had any right, title, interest or claim to the timber or timberlands above described, wrongfully failed and refused to further carry out or perform such joint adventure agreement, wrongfully failed and refused to buy or sell any timber or timberlands, ceased to be associated with plaintiff in the carrying on of the business of the joint adventure agreement, has prevented plaintiff from further performing said joint adventure agreement and has appropriated the timber and timberlands above described to his own uses and purposes to the exclusion of plaintiff. Plaintiff has many times since demanded of defendant, that defendant perform and carry out said joint adventure agreement, recognize his right, title and interest in and to the above described timber and timberlands and has repeatedly demanded of defendant an accounting of the business transactions, advances and expenditures of the joint adventure agreement made by defendant, all of which demands have been wrongfully refused by defendant.

### VII.

"That ever since on or about July 2, 1946, said timber and timberlands could have been advantageously sold at a large profit. A reasonable time has elapsed since the purchase of such timber and timberlands, and plaintiff has been ever since July 2, 1946, and now is able, ready and willing to sell said timberlands for and on behalf of plaintiff and defendant, at a large and substantial profit. In spite of the demands made upon defendant by plaintiffs [sic], defendant has in all respects failed to carry out or perform any of the terms of such joint adventure and has been guilty of a breach thereof, and a breach of trust, as aforesaid; all of such conduct on defendant's part is without any just cause or reason thereby de-

priving plaintiff of his rights under said joint adventure agreement to the timber and timberlands purchased pursuance [sic] thereto, and has deprived plaintiff of the expected profits and the profits that he is entitled to under such agreement and because of his labors, efforts, and expenditures in connection with the performance thereof.

### VIII.

"Plaintiff has done and performed all things by him to be performed and done under the terms of the joint adventure agreement by him and is now able, ready and willing to do and perform any other matters and things required of him under such agreement. All conditions precedent have been performed and have occurred.

"Wherefore, plaintiff prays for a decree of this Court against the defendant as follows:

### I.

"That the joint adventure of plaintiff and defendant be established and plaintiff's interest in the above-described premises, timber and timberlands be determined.

### II.

"That the title to all of the above-described premises, timber and timberlands, whether standing in the name of the defendant herein, or otherwise, and that plaintiff's interest in, claim to, or equitable title be determined and ascertained, liquidated and sold pursuant to the order of the Court, or it be divided in kind.

### III.

"That a full and complete accounting be had between the parties hereto.

### IV.

"That in the event of the liquidation or sale of the premises, timber and timberlands hereinbefore described, that one-half of the fair cash market value thereof, which was acquired by the plaintiff and defendant through tax or tax title proceedings and twenty per cent (20%) of the fair cash market value of lands acquired from private parties, after deducting any and all sums properly due to the defendant herein, be ordered and decreed paid to plaintiff.

### V.

"That the plaintiff herein have such other relief as may be just, equitable, and meet in the premises."

4. Helvering v. Safe Deposit & Trust Co. of Baltimore, supra.

constituted distribution of property in the nontaxable dissolution of a joint venture, and that the fair value thereof did not constitute compensation for personal services or damages for lost profits.

Affirmed.